0027

Kenneth N. SHEA, a person *non compos mentis*, by his Guardian Ad Litem, Connie G. REYNOLDS, Appellant, v. STATE of South Carolina DEPARTMENT OF MENTAL RETARDATION, Respondent.

(310 S. E. (2D) 819)

Court of Appeals

*Robert A. McKenzie,* of *Rogers, McDonald, McKenzie, Fuller & Rubin,* Columbia, and *C. LaVaun Fox,* of *Garvin, Fox, Zier & Burkhalter,* Aiken, *for appellant.*

*Atty. Gen. T. Travis Medlock, Retired Atty. Gen. Daniel R. McLeod* and *Asst. Atty. Gen. Edwin E. Evans,* Columbia, *for respondent.*

December 19, 1983.

SANDERS, Chief Judge:

Appellant Shea, who is mentally retarded, brings this action by his guardian ad litem against respondent State Department of Mental Retardation, alleging he was injured by the negligence of the Department while under the care of its Midlands Center facility. The lower court granted summary judgment to the Department on the grounds of sovereign immunity. We reverse.

South Carolina has for many years adhered to the common law doctrine of sovereign immunity which holds that neither the State nor any of its agencies may

be sued without the express consent of the legislature. *McKenzie v. McKenzie*, 276 S. C. 461, 279 S. E. (2d) 609 (1981); *Hazard v. South Carolina State Highway Department*, 264 S. C. 386, 215 S. E. (2d) 438 (1975). A suit against a department of state government is actually one against the State itself. *United States Casualty Company v. State Highway Department of South Carolina*, 155 S. C. 77, 151 S. E. 887 (1930).

The doctrine was most recently affirmed by our Supreme Court, with two Justices dissenting, in the cases of *Reed v. Medlin*, 276 S. C. 604, 281 S. E. (2d) 125 (1981); *Belue v. City of Spartanburg, et al.*, 276 S. C. 381, 280 S. E. (2d) 49 (1981); and *Tucker v. Kershaw County School District and Board of Trustees, et al.*, 276 S. C. 401, 279 S. E. (2d) 378 (1981).

Shea first asks that this Court specifically overrule the doctrine of sovereign immunity, relying generally on the reasoning adopted by the dissenting opinions of Justices Ness and Harwell in *Belue*, which quotes the following language from *Molitor v. Kaneland Community Unit District No. 302*, 18 Ill. (2d) 11, 163 N. E. (2d) 89 (1959):

> It is a basic concept underlying the whole law of torts today that liability follows negligence, and that individuals and corporations are responsible for the neglegence of their agents and employees acting in the course of their employment. The doctrine of governmental immunity runs directly counter to that basic concept. What reasons, then, are so impelling as to allow a school district, as a quasi-municipal corporation, to commit wrongdoing without any responsibility to its victims, while any individual or private corporation would be called to task in court for such tortious conduct? *Id.* 163 N. E. 2d at 93.

A cursory review of other jurisdictions indicates that this doctrine has not fared well recently. Abrogation of immunity of state and local governments has resulted in a melange of constitutional, legislative, and judicial action throughout the nation. This rapid yet piecemeal abolition makes "nose counting" and categorization difficult. However, the following listing gives a reasonably accurate, albeit perhaps imprecise, account of the treatment of the doctrine in other states

through 1981, the year of the *Reed, Belue,* and *Tucker* decisions.

Courts in 36 jurisdictions have abolished portions of sovereign immunity;[1]

| | |
|---|---|
| Alabama | Mississippi |
| Arkansas | Missouri |
| Arizona | Nebraska |
| California | Nevada |
| Colorado | New Hampshire |
| Connecticut | New Jersey |
| Delaware | New Mexico |
| Florida | New York |
| Idaho | North Carolina |
| Illinois | North Dakota |
| Indiana | Ohio |
| Kansas | Pennsylvania |
| Kentucky | Rhode Island |
| Louisiana | Wahington |
| Maine | West Virginia |
| Massachusetts | Wisconsin |
| Michigan | Wyoming |
| Minnesota | District of Columbia |

The courts of six states have considered the question and have decided not to abolish the doctrine: Georgia, Maryland, *South Carolina,* Tennessee, Vermont, and Wyoming.[2]

In only four states has there been no legislative or judicial action to abolish or limit immunity for state or local governments: Delaware, Maryland, South Dakota and Virginia.[3] In three other states, the state is immune, but local government is not: Alabama, Arkansas and Wyoming.[4] While this listing may now be somewhat outdated, a clear trend against the

---

[1] See 3 K. Davis, *Administrative Law Treatise* § 25.00 (1958 as supplemented to 1980); Taylor, *A Re-examination of Tort Immunity in Virginia,* 15 Rich. L.R. 247 (1981).

[2] *Davis, supra; Taylor, supra.*

[3] Note, *Government Tort Immunity in Massachusetts,* 10 Suffolk U.L.R. 521 at 524 (1975).

[4] *id.*

doctrine is indicated.[5] Whether this Court may abolish sovereign immunity is, however, another matter.

The South Carolina Court of Appeals was made a part ■■ of the unified judicial system to address a mounting plethora of appeals and thereby make the appellate process more efficient. The maintenance of a harmonious body of decisional law is essential to the efficient administration of justice. Therefore, if the judicial system is to operate efficiently, this court must be bound by decisions of the Supreme Court. Where, as here, the law is unmistakably clear, this court has no authority to change it. Accordingly, we must decline to directly overrule the doctrine of sovereign immunity. However, Shea's cause here need not fail where the doctrine has been expressly and explicitly waived by statute. *Reed.*

Section 44-7-50 of The Code of Laws of South Carolina (1976), as amended, states in pertinent part:

> The doctrine of charitable and sovereign immunity as they relate to *hospitals and other medical facilities* in this State are hereby modified to the extent that any person sustaining an injury ... by reason of the tortious act of commission or omission of agents, servants, employees or officers of ... a hospital or other medical facility operated or funded by the State, its agencies, departments, institutions, commissions, boards or political subdivisions may recover in any action brought against such hospital or other medical facility for such actual damages as he may sustain a sum not exceeding one hundred thousand dollars. (Emphasis added.)

Shea alleges he was injured at Midlands Center which is operated by the Department. If Midlands Center can be construed as either a "hospital or other medical facility," Shea is

---

[5] *See Ayala v. Philadelphia Board of Public Education,* 453 Pa. 584, 305 A. 2d 877 (1973) (one of the better point by point discussions of the reasons for abolishing of municipal corporations); *Mayle v. Pennsylvania Department of Highways,* 479 Pa. 384, 388 A. 2d 709 (1978) (followed logic of *Ayala* and abolished state immunity).

*See also Cauley v. City of Jacksonville,* 403 So. 2d 379 (Fla. 1981) (footnote 14 catalogues the positions of the states on the issue); *Verlinden v. Central Bank of Nigeria,* ___ U. S. ___, 103 S. Ct. 1962, 76 L. Ed. 2d 81 (1983) (deals with immunity of a foreign sovereign).

entitled to maintain this action and the judge below was in error in granting summary judgment to the Department.

The Department urges a general definition of the word "hospital" from various reference books and cases in other states, in an effort to persuade us that Midlands Center is not a hospital as a matter of law.[6] These definitions provide generally that a hospital is a place where the sick or injured are given medical treatment. The Department contends that only the licensed infirmary of Midlands Center is a hospital within this definition and should be treated separately from the Center itself.

Section 44-7-50 provides waiver of immunity for not only hospitals but "other medical facilities" as well. We find two South Carolina cases to be useful in construing this phrase. *Caldwell v. McMillan*, 224 S. C. 150, 77 S. E. (2d) 798 (1953), addressing the statutory language "other proper facilities," defined "facility' as "[a] thing that promotes the ease of any action, operation, transaction or course of conduct; advantage; opportunity; ..." *Abernathy v. Prudential Insurance Company of America*, 274 S. C. 388, 264 S. E. (2d) 836 (1980), broadly defines "medical care and treatment" and holds there is no requirement that they be performed by or under the care of licensed medical personnel.

The record in this case contains a number of affidavits and admissions filed by the Department from which it is reasonable to infer that Midlands Center provides a range of medical services to persons under its care, including Shea. While it may be true, as contended by the Department, that the mentally retarded are not by definition "sick," the Department admits that mentally retarded persons have a higher incidence of at least one kind of sickness (seizure disorders) than does the general population. In one affidavit specific reference is made to the phenomenon of epileptic seizures among the mentally retarded and the administration of seizure controlling drugs. Another affidavit states "developmentally disabled persons may be at risk for a higher incidence of special health problems." A further affidavit indicates the ratio of

---

[6] 40 Am. Jur. 2d, *Hospitals and Asylums* § 1 (1968); *Bennett v. Bennett*, 27 Ill. App. 2d 24, 169 N. E. 2d 172 (1960); *Webster's Third New International Dictionary* 1093 (1971).

full-time physicians to residents of the Department's facilities is 21 to 3,328 or in excess of 1 to 158.

More specifically, the Department admits Shea himself was subject to seizures for which it was administering the drug phenobarbital. In yet another affidavit the Department states that Shea, under the care of a registered therapist, participates each week in a physical therapy program. The Department further admits that physical therapists, health aides, speech therapists, dieticians, and nutritionists are on the staff of Midlands Center. The Department sought to qualify its admissions regarding physicians, to have them only associated with the infirmary, but made no such qualification as to medical care services provided by these other professionals.[7]

Finally, the pleadings here are worthy of note. Shea alleges, as one of the major aspects of his complaint, that the Department was negligent in not rendering him proper medical care. The Department concedes in its answer that it provided and was responsible for all medical care Shea received.

■ Circuit Court Rule 44 provides for summary judgment only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Cases construing the application of this rule have held that in order for summary judgment to be granted, it not only must be clear that no issue of fact is involved, but the conclusions and inferences to be drawn from those facts must be undisputed as well. Likewise, summary judgment is inappropriate where further inquiry into the facts of the case is desirable to clarify the application of the law. *Abrams v. Wright*, 262 S. C. 141. 202 S. E. (2d) 859 (1974). As was held in *Williams v. Chesterfield Lumber Company*, 267 S. C. 607, 230 S. E. (2d) 447 (1976):

> Summary judgment can only be granted in those cases where plain, palpable and indisputable facts exists on which reasonable minds cannot differ. All ambiguities, conclusions and inferences arising in and from the evi-

---

[7] Section 44-1-180 of The Code of Laws of South Carolina (1976) specifically provides that the term "medical care" includes the services of physical therapists, health aides, speech therapists, and nutritionists.

dence must be construed most strongly against the movant for summary judgment. *Id.* at 610, 230 S. E. (2d) 448.

The question of the construction of this statute as applied to a mental retardation facility is an important question of novel impression. If the statute's application is not absolutely clear as a matter of law, this question should not be decided without fully developing the facts by means of trial. *Cf. State ex rel. McLeod v. Fritz Waidner Sports Cars, Inc.*, 274 S. C. 332, 263 S. E. (2d) 384 (1980); *Stalheim v. Doskocil*, 273 S. C. 547, 257 S. E. (2d) 738 (1979; *Williams v. Streb, et al.*, 270 S. C. 650, 243 S. E. (2d) 926 (1978); *Hanselmann v. McCardle*, 270 S. C. 367, 242 S. E. (2d) 421 (1978) (demurrer cases).

The record here strongly indicates that further inquiry into the facts is warranted. At the very least, the inferences which can be drawn from the record are not clear as to the nature of Midlands Center. We therefor hold that the lower court erred in ruling as a matter of law that the Center was not a "hospital or other medical facility" within the meaning of section 44-7-50.

Accordingly, the judgment of the lower court is

Reversed.

GARDNER and BELL, JJ., concur.