1969

Patty Ann BRAYBOY, as Personal Representative of the Estate of Tameka Brayboy, Appellant v. James H. EWING, M.D., and David C. McLean, M.D., of whom David C. McLean, M.D., is Respondent.

(428 S.E. (2d) 731)

Court of Appeals

*E. LeRoy Nettles, Sr.,* of *Nettles, Turbeville & Reddeck,* Lake City, *for appellant.*

*Edwin P. Martin* and *Linda W. Rogers,* of *Turner, Padget, Graham & Laney,* Columbia, *for respondent.*

*David A. Brown,* of *Henderson & Salley,* Aiken, *for defendant.*

Submitted Jan. 26, 1993.

Decided March 15, 1993.

*Per Curiam:*

This is an appeal from a motion granting summary judgment based on Statute of Limitations. Patty Ann Brayboy

(Brayboy), as personal representative of the Estate of her daughter, Tameka Brayboy (Tameka), filed wrongful death and survival actions against Dr. James H. Ewing (Ewing) and Dr. David C. McLean (McLean) as a result of Tameka's death. The trial judge granted summary judgment in favor of McLean. Brayboy appeals. We affirm.

## FACTS

The record reflects that Tameka was born on July 30, 1983, and died on November 14, 1986, from seizures. Ewing delivered Tameka at McLeod Regional Medical Center. McLean first attended Tameka on his rounds the day after she was born, and subsequently, became her pediatrician. Tameka began having seizures within six months of birth. Brayboy's doctor, Dr. Tony Graham (Graham) saw the child on several occasions from 1984 until her death. Tameka was also seen by a neurologist at which time a CT scan was run with no conclusive results as to the cause of her seizures. In 1985 Brayboy requested McLean's records on Tameka which did not indicate any one cause which may have been responsible for the seizures. This action was filed in 1990, four years after Tameka's death.

## DISCUSSION

Brayboy contends that McLean is equitably estopped from claiming that wrongful death and survival actions are barred by the Statute of Limitations. We hold that McLean is not equitably estopped and that the actions were filed outside the appropriate Statute of Limitations.

In *Johns v. Johns* this Court stated:

The elements of estoppel as to the party estopped are (1) conduct by the party estopped which amounts to a false representation or concealment of material facts; (2) the intention that such conduct shall be acted upon by the other party; and (3) knowledge, actual or constructive, of the true facts. As to the party claiming estoppel, the elements are (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; and (2) reliance upon the conduct of the party estopped.

— S.C. —, —, 420 S.E. (2d) 856, 859 (1992) *citing Southern Dev. Land & Golf, Co., Ltd. v. South Carolina Pub. Serv. Auth.*, 305 S.C. 507, 409 S.E. (2d) 428 (Ct. App. 1991).

Brayboy claims that she was lulled into a false sense of security by McLean's conduct which prevented her from filing suit within the Statute of Limitations. She asserts that he told her Tameka's delivery was normal and that McLean either ignored or chose not to disclose the express findings of the CT scan. The CT scan report is of record and reflects the following. "Diagnosis: Diffuse atrophy probably from neonatal hypoxia with no focal lesions demonstrated."

It is disputed as to whether records of the CT scan were given to Brayboy in 1985 when she requested Tameka's records from McLean. McLean argues that this issue was not raised below and is, therefore, not properly before this Court. We hold that it is not necessary to address the issue of the CT scan because there is other evidence of record which shows that Brayboy had notice that Tameka's seizures could have been caused by problems during birth.

The record reflects that the documents requested by Brayboy in 1985 included a 1984 discharge summary in which Dr. Paul Brazis wrote, "CT scan showed diffuse atrophy. It was my impression at that time that the patient had motor delay, mental retardation and seizures with diffuse cerebral atrophy. Possibilities included prenatal, perinatal, and *postnatal insults, for example, hypoxia,* infection, et cetera." (Emphasis added.)

In her affidavit Brayboy states that sometime in 1984, "Dr. Graham had previously told me that [Tameka's] condition *could have resulted from a lack of oxygen during delivery.* He did not tell me that this would indicate wrongdoing on the part f any physician, but always suggested that I go back to Dr. McLean for information and treatment, since he was Tameka's regular doctor." (Emphasis added.) Graham confirmed this conversation. Additionally, in 1984 Brayboy sought legal advice regarding a potential malpractice suit on behalf of Tameka.

To successfully assert equitable estoppel the party claiming estoppel must have a "lack of knowledge and of the means of knowledge of the truth as to the facts in question." *Id.* We hold that there is ample evidence that

Brayboy had knowledge or at least the means to ascertain the truth as to whether Tameka's condition was the result of malpractice at her birth. She, in fact, received documentation which suggested "postnatal insults, for example, hypoxia." Regardless of whether this information came from Graham, McLean's records or the CT scan, it put Brayboy on notice that a lack of oxygen at birth may have been the cause of Tameka's seizures.

Additionally, a party against whom equitable estoppel is asserted must have "knowledge, actual or constructive, of the true facts." *Id.* There is no conclusive evidence of record as to the cause or Tameka's condition. The record reflects that her condition could have resulted from many different causes, including hypoxia. Moreover, there is no evidence which shows that McLean had conclusive knowledge of the cause of Tameka's problems. Accordingly, we hold that McLean is not estopped from asserting the Statute of Limitations as a bar to Brayboy's claim.

Under the appropriate statute, the wrongful death action should have been brought either three years after Tameka's birth, in 1985, or in 1988, three years after Brayboy received the medical records and talked with Graham. In any event, the suit should have been brought no later than 1989, six years after Tameka's birth. S.C. Ann. § 15-3-545 (Supp. 1992). Accordingly, we affirm the grant of summary judgment in favor of McLean.

For the foregoing reasons, we affirm the trial court.

Affirmed.