2303

Muriel W. O'TUEL, Ph. D., as Guardian ad Litem for Adam McPherson Arnette, Appellant v. A.J. VILLANI, Jr., M.D. Respondent. Terry G. ARNETTE and Elizabeth L. Arnette, Appellants v. A.J. VILLANI, Fr., M.D., Respondent.

(455 S.E (2d) 698)

Court of Appeals

*A. Elliott Barrow, Jr.,* Charleston, *for appellants.*

*Charles E. Carpenter, Jr., Donald V. Richardson, III,* and *Deborah Harrison Sheffield,* all of *Richardson, Plowden, Grier & Howser,* Columbia, *for respondent.*

Heard Jan. 12, 1995.

Decided Feb. 13, 1995; Reh. Den. Apr. 4, 1995.

HOWELL, Chief Judge:

These are medical malpractice cases arising from the alleged negligence of the treating physician in failing to perform a cesarean deliver of the minor Adam Arnette. The court granted summary judgment to the physician in both cases holding that the parents' claim was barred by the statute of limitations, and that the child's case failed as a matter of law because he did not present any competent evidence to demonstrate his learning disability was proximately caused by the actions of Dr. Villani. The parents and child appeal. We affirm as to the parents' case and reverse as to the child's case.

Adam was born by vaginal delivery on August 27, 1983 after his mother was in labor for slightly less than twenty-four hours. Shortly after his birth, Adam developed certain physical problems, including pyloric stenosis and a blocked tear duct. In addition, Adam later developed a narrow urinary tract opening which required surgery, and wore corrective shoes because of a hip problem. These problems were characterized by Dr. Villani's experts as congenital or developmental. An MRI scan of Adam's brain taken just before the summary judgment hearing also revealed that Adam has a brain abnormality known as a type one Chiari malformation.

At the summary judgment hearing, Dr. Villani presented the depositions of several experts who testified that Dr. Villani did not breach the standard of care by allowing Adam's mother to deliver vaginally rather than performing a cesarean section. Dr. Villani's experts further testified that while periods of reduced oxygen did occur, Adam did not suffer an hypoxic event or other birth trauma which caused any of Adam's injuries. The appellants presented the deposition of Dr. Floyd, an obstetrics expert, who stated that Dr. Villani breached the standard of care by failing to perform a cesarean section in light of evidence of a potential cephal-ic/pelvic disproportion, and that Adam suffered an hypoxic event during delivery. However, Dr.

Floyd did not testify as to the cause of Adam's learning disabilities. The appellants offered an affidavit from Dr. Onischenko, a clinical psychologist, to establish proximate cause.

## I. *Parents' Claim*

Adam was born in 1983, and his learning disabilities were allegedly first discovered when he started school in 1990. The parents' suit was filed in June of 1992. The trial court granted Dr. Villani's motion for summary judgment, finding that the parents' claim was barred by the six-year statute of repose in S.C. Code Ann. § 15-3-545 (Supp. 1993). Under this statute, an action for medical malpractice must be commenced within three years from the date of treatment or three years from the date of discovery, but not more than six years from the date of occurrence. The parents contend § 15-3-545 requires them to bring suit within six years after their cause of action accrued. Because no injuries were manifest until Adam started school in 1990, the parents claim their action was timely filed. We disagree.

The parents' interpretation of the statute would allow all claims to be brought within six years after discovery of the injury, effectively reading out the statute's three-year time limit. The six-year period constitutes an outer limit beyond which a medical malpractice claim is barred, regardless of when it is discovered. *Hoffman v. Powell*, 298 S.C. 338, 380 S.E. (2d) 821 (1989). Thus, while the parents' claim may have accrued when Adam started school, their claim is nonetheless barred because it was instituted more than six years from the date of occurrence, in this case, the date of Adam's birth. *See Johnson v. Phifer*, — S.C. —, 424 S.E. (2d) 532 (Ct. App. 1992) (while cause of action accrued in 1987 when negligence was discovered, action filed in 1990 was barred by the medical malpractice statute of repose when negligence occurred in 1974-1977). Accordingly, the trial court properly granted summary judgment against the parents' claim.

## II. *Adam's Claim*

### A. Competency of Expert Witness

Dr. Villani also moved for summary judgment in Adam's case, arguing that Adam's claim was likewise barred by the statute of limitations, and that he did not

violate any standard of medical practice which was a proximate cause of any injury to Adam. The trial court rejected the statute of limitations argument, finding that the tolling provisions of S.C. Code § 15-3-40 applied, giving Adam until his nineteenth birthday to bring suit. The trial court nevertheless granted summary judgment against Adam, finding that because Adam's proximate cause expert, a clinical psychologist, was not qualified as an expert in the field of obstetrics, his opinion on causation lacked probative value. Given that the plaintiff's obstetrical expert had no opinion regarding the proximate cause of Adam's mental deficiencies, the court granted summary judgment in favor of Dr. Villani.

On appeal, Adam contends Dr. Onischenko, an expert in learning disabilities and mental deficiencies, was competent to testify as to the proximate cause of Adam's injuries. Given the particular circumstances of this case, we agree. In a medical malpractice case, the plaintiff must establish proximate cause as well as negligence, *Bramlette v. Charter-Medical-Columbia*, 302 S.C. 68, 393 S.E. (2d) 914 (1990), and, as a general rule, expert testimony is required to establish proximate cause. *Botehlo v. Bycura*, 282 S.C. 578, 320 S.E. (2d) 59 (Ct. App. 1984). To be competent as an expert, a witness must have acquired by reason of study or experience or both such knowledge and skill in a profession or science that he is better qualified than the jury to form an opinion on the particular subject of his testimony. *Id.* Stated differently, if the witness through his education and experience is able to draw inferences that could not be drawn by a layman, he should be qualified as an expert. *See Avret v. McCormick*, 246 Ga. 401, 271 S.E. (2d) 832 (1980). The record establishes that Dr. Onischenko is a specialist in learning, psychological, and other intellectual disabilities, with a master's as well as doctorate degree. He has worked in his area of specialty since at least 1975. Given his education and experience, there can be no doubt that Dr. Onischenko is competent to give expert testimony in the area of learning and other intellectual disabilities.

The trial court, however, refused to accept Dr. Onischenko's affidavit to establish proximate cause, stating that "[n]othing in the record establishes that Dr. Onischenko had the training or the experience to qualify him as an expert in obstetrics. His

training is as a clinical psychologist. He is not a physician. He offered no evidence that would qualify him as an expert on obstetrics, the diagnosis of hypoxia, [or] delivery. . . ." However, Dr. Onischenko was not offered as an expert in obstetrics, nor was his testimony offered to establish that hypoxia in fact occurred during Adam's delivery. It was Dr. Floyd's testimony which provided evidence that Dr. Villani breached the standard of care and that Adam suffered hypoxia. Dr. Onischenko's affidavit was offered for proximate cause only; that is, to show that the hypoxia already established through Dr. Floyd's testimony caused Adam's learning disabilities. Because Dr. Onischenko was not offered to show a breach of the standard of care, he need not have any specialized knowledge in the field of obstetrics.

According to his affidavit, Dr. Onischenko is "frequently called upon to make diagnoses of learning and other intellectual and psychological disabilities and to prescribe treatment. As an integral part of making such diagnoses and prescribing treatment, it is often required that an analysis of the cause of such problems be made and conclusions reached." Dr. Onischenko's affidavit therefore established that through his training, education, and experience, he was capable of drawing inferences about the cause of Adam's problems which could not be drawn by the jury or other laymen. We require no more than that of an expert witness. We do not require that an expert in a medical malpractice be a specialist in the field of medicine involved, *Bonaparte v. Floyd,* 291 S.C. 427, 354 S.E. (2d) 40 (Ct. App. 1987), nor do we necessarily require that the expert even be ˋ doctor. *See Gooding v. St. Francis Xavier Hosp.,* — S.C. —, 4b4 S.E. (2d) 40 (Ct. App. 1995), (emergency room technician who trained doctors in proper intubation methods competent to testify that teeth are easily chipped if intubation performed improperly); *cf. Daniels v. Bernard,* 270 S.C. 51, 240 S.E. (2d) 518 (1978) (in personal injury action, chiropractor competent to interpret x-rays and testify about plaintiff's physical condition and need for future treatment); *Howle v. PYA/Monarch, Inc.* 288 S.C. 586, 594, 344 S.E. (2d) 157, 161 (Ct. App. 1986) ("a psychologist, once qualified as an expert witness by reason of education, training, and experience, is competent to testify as to diagnosis, prognosis, and causation of mental and emotional

disturbance."). While Dr. Onischenko's lack of a medical license may affect his credibility and is a proper subject for cross-examination and comment during closing argument, it is not, in and of itself, reason to refuse to qualify him as an expert. *Howle*, 288 S.C. at 594, 344 S.E. (2d) at 161. Defects in the amount and quality of his education or experience go to the weight of his testimony, not its admissibility. *See Bonaparte, supra; Gooding, supra.*

Dr. Onischenko was not called upon to pass judgment on the care provided by Dr. Villani. Rather, he was called upon solely to testify that, based on his training and years of experience in diagnosing and treating learning disabilities, Adam's particular problems were caused by the hypoxia established through another expert. The trial court apparently did not consider this limited purpose for which Dr. Onischenko's affidavit was offered. Accordingly, it was an abuse of discretion to refuse to consider the affidavit as evidence of proximate cause. Because Dr. Onischenko's affidavit creates an issue of fact regarding the proximate cause of Adam's injuries, summary judgment should not have been granted. *Cafe Assocs., Ltd. v. Gerngross*, 305 S.C. 6, 406 S.E. (2d) 162 (1991) (summary judgment is appropriate only when it is clear that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law).

B. Sufficiency of Expert's Affidavit

In addition to Dr. Onischenko's competency, Dr. Villani also challenges the language of the affidavit itself, arguing that it is too conclusory to establish proximate cause. The affidavit states in pertinent part:

As part of my evaluation of Adam, I have formed a professional opinion within a reasonable degree of clinical and professional certainty and probability that Adam is suffering from severe learning disabilities and borderline mental retardation. I have reached the further professional opinion, in the absence of any other causative factors, that Adam's severe learning disabilities and borderline mental retardation were most probably caused by brain dysfunction occasioned by oxygen deprivation during the labor and delivery process at and during Adam's birth.

For the purpose of determining whether summary judgment was proper, we interpret the affidavit as stating that Dr. Onischenko found no other causative factors present in Adam's case, and that his learning disabilities were most probably caused by the oxygen deprivation during his birth. Viewing as we must this evidence and all inferences which can be reasonably drawn from it in the light most favorable to the nonmoving party, we find that Dr. Onischenko's affidavit is sufficient to avoid summary judgment.

### C. Applicability of Tolling Statute

As an additional sustaining ground, Dr. Villani contends that even if Dr. Onischenko's affidavit is admitted, this court should nonetheless affirm the granting of summary judgment because Adam's claim is barred by the medical malpractice statute of repose.[1] We disagree. S.C. Code Ann. § 15-3-40 is a general statute of limitations tolling provision for persons under a disability. For causes of action accruing after March 14, 1988, the statute provides:

> if a person entitled to bring an action mentioned in Article 5 of this Chapter . . . be at the time the cause of action accrued . . . within the age of eighteen years[;] . . . [t]he time of such disability is not a part of the time limited for the commencement of the action, except that the period within which the action must be brought cannot be extended . . . in any case longer than one year after the disability ceases.

S.C. Code Ann. § 15-3-40 (Supp. 1993). For causes of action accruing before March 14, 1988, minority is considered to be within the age of twenty-one rather than eighteen. S.C. Code Ann. § 15-3-40 (1976). Adam was born in 1983, and his complain was filed on June 16, 1992. Thus, whether Adam's cause of action accrued before or after 1988, if the tolling statute applies to Adam's case, his action was timely filed.

---

[1] As additional sustaining grounds, Dr. Villani also argues that prejudgment interest is not recoverable in a tort action, and that medical expenses are an element of the parents' damages and cannot be recovered in Adam's case. While these arguments were presented to the trial court, they were not ruled on by the court, and therefore cannot be raised as additional sustaining grounds. See *Carter v. Peace*, 229 S.C. 346, 93 S.E. (2d) 113 (1956) (proposition relied on as an additional sustaining ground must be presented to and passed on by the trial court to warrant consideration on appeal).

The tolling statute applies to any person entitled to bring an action "mentioned in Article 5 of this Chapter." The chapter in which the tolling statute is found is chapter three of Title 15, entitled "Limitation of Civil Actions." Article 5 of that chapter is entitled "Actions Other Than for Recovery of Real Property." S.C. Code Ann. §§ 15-3-510 -680 (1976 & Supp. 1993). Tort actions generally, and medical malpractice specifically, are actions "other than for the recovery of real property," and the statutes of limitations for those actions are found within Article 5. *See* S.C. Code Ann. § 15-3-530 (1976 & Supp. 1993) (tort claims); S.C. Code Ann. § 15-3-545 (Supp. 1993) (medical malpractice). The tolling statute thus clearly applies to a medical claim, and Adam's suit was therefore timely filed.

That the legislature intended malpractice claims to be subject to tolling is evident from a review of the portion of the malpractice statute of limitations which applies to causes of action accruing after April 5, 1988. That version of the statute provides that

> *Notwithstanding the provisions of Section 15-3-40*, if a person entitled to bring an action against a licensed health care provider . . . is under the age of majority at the date of the treatment, omission, or operation giving rise to the cause of action, the time period or periods limiting the filing of the action are not tolled for a period of more than seven years on account of minority, and in any case more than one year after the disability ceases.

S.C. Code Ann. § 15-3-545(D) (Supp. 1993) (emphasis added). This provision operates to limit the period of tolling which would otherwise be applicable, and demonstrates that, while the legislature was concerned with increased exposure to claims created by the tolling statute, the legislature was not willing to completely abandon the protection given minors by the tolling statute.[2] Therefore, because the general tolling provisions of § 15-3-40 are applicable to medical malpractice

---

[2] Dr. Vallani relies on the Supreme Court's recent opinion in *Langley v. Pierce*, — S.C. —, 438 S.E. (2d) 242 (1993) for his argument that the medical malpractice statute is not tolled during periods of minority. We disagree. *Langley* involved the applications of § 15-3-30 (which tolls the statute of limitations if the defendant leaves the state for more than one year) to the provi-

claims brought under the pre-April 1988 statute of limitations, Adam's action against Dr. Villani was timely filed.

### III.

To summarize, we find that the parents' claim against Dr. Villani is barred by the medical malpractice statute of repose, and the trial court's granting of summary judgment on their claim in favor of Dr. Villani is hereby affirmed. Adam's claim, however, is not barred by the statute of repose. We further find that, for the limited purposes for which he was offered as an expert, Dr. Onischenko was competent to testify, and that his affidavit created a genuine issue of fact regarding the proximate cause of Adam's injuries. Accordingly, the order of the trial court granting summary judgment in favor of Dr. Villani on Adam's claim is hereby reversed.[3]

Affirmed in part and reversed in part.

CURETON and CONNOR, JJ., concur.

---

sions of § 15-3-545 which apply to causes of action accruing after April 5, 1988. The post-April 1988 version of the statute is significantly different from the version involved here, because the post-April 1988 statute includes certain tolling provisions. It was this specific tolling language which compelled the result in *Langley*. Thus, because *Langley* interpreted the post-April 1988 statute, it does not control our analysis here.

Dr. Villani also contends that *Brayboy v. Ewing*, — S.C. —, 428 S.E. (2d) 731 (Ct. App. 1993) establishes that tolling does not apply to medical malpractice claims. In *Brayboy*, the personal representative of a minor's estate brought a wrongful death action against the minor's physician more than six years after the minor's birth. This Court found that the action was not timely brought under the medical malpractice statute of limitations. *Id.* Dr. Villani argues if the tolling statute applied to medical malpractice claims, the court could not have found the claim untimely. We disagree. A wrongful death action is brought by the administrator of the decedent's estate, S.C. Code Ann. § 15-51-20 (Supp. 1993); the minority or other disability of the decedent is therefore irrelevant when determining whether the wrongful death action was timely brought. Accordingly, *Brayboy* has no application to the case at bar.

[3] Our disposition of Adam's claims renders moot his contention that the trial court improperly considered an excerpt from a medical treatise submitted to the court by Dr. Villani.