The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Neill Fuleihan. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is 34 years of age, right-hand dominant, and has taken some courses towards earning her general equivalency degree. Plaintiff began employment in 1989 as an auto-coner operator in defendant-employer's textile plant, which position required plaintiff to exercise repetitive motion of both upper extremities and hands. For her medical history, plaintiff had experienced no problems with her hands, neck or back prior to working for defendant-employer.
2. On September 10, 1990 plaintiff sustained an injury to her neck while pushing a box weighing approximately 300 pounds, when said box began to slide off its runners and plaintiff attempted to lift the box and steer it back on course. At that time, plaintiff informed defendant-employer's overhauler on winding that she had hurt her back, and the incident was recorded in defendant-employer's first aid log. Defendant-employer did not file an Industrial Commission Form 19 and plaintiff did not file a written notice of the accident or claim for compensation for injury to her neck, as a result of the September 10, 1990 incident.
3. For approximately two years prior to October 9, 1991, plaintiff suffered from pain in both wrists and her entire left arm, as well as numbness and tingling in both hands.
4. On October 9, 1991 plaintiff complained to defendant-employer of "hands going to sleep and numbness in her fingertips."
5. On October 16, 1991 plaintiff was first seen by Dr. Dray. At that time plaintiff complained of bilateral hand numbness, tingling and pain. Plaintiff denied having sustained other work-related injuries in the past.
6. On October 16, 1991 plaintiff had severe bilateral carpal tunnel syndrome.
7. On October 29, 1991 plaintiff ceased working for defendant-employer due to her bilateral carpal tunnel syndrome.
8. On October 29, 1991 and November 19, 1991 Dr. Dray surgically treated plaintiff for bilateral carpal tunnel syndrome by performing a left carpal tunnel release and a right carpal tunnel release, respectively.
9. As a result of her employment with defendant, plaintiff was placed at an increased risk of developing bilateral carpal tunnel syndrome as compared to members of the general public not so exposed. The repetitive work required by plaintiff's employment with defendant caused, or was a significant contributing factor in the development of, plaintiff's bilateral carpal tunnel syndrome.
10. Thereafter, defendants accepted liability for plaintiff's "no feeling in hands or fingertips," which was diagnosed as bilateral carpal tunnel syndrome on October 16, 1991 and entered into an agreement concerning the same which is hereinabove incorporated by reference.
11. Dr. Dray continued to treat plaintiff subsequent to her surgeries of October and November 1991 for continued symptomology consistent with bilateral carpal tunnel syndrome.
12. On October 19, 1992 plaintiff reached the end of the healing period from her bilateral carpal tunnel syndrome and resulting surgeries, and as a result thereof retained an 8 percent permanent partial impairment of her left hand and a 5 percent permanent partial impairment of her right hand, and was restricted to no repetitive work with the hands and wrists, lifting no greater than 15 pounds and no torsion, extension or flexion of the wrists.
13. Subsequent to reaching the end of the healing period, plaintiff continued to have incapacitating sympomology of severe bilateral hand and arm pain, for which she was again seen by Dr. Dray in January of 1993. At that time, Dr. Dray was unable to determine the cause of plaintiff's continued troubles. He restricted plaintiff against repetitious movements; lifting in excess of five pounds; wrist flexion, extension and torsion; and all use of the arms above the elbow. Said restrictions applied to plaintiff's left and right arms. In response to Dr. Fray's questions regarding other pain sources, plaintiff first informed him that she had suffered from a burning pain in her neck, shoulders and upper back since the incident of September 10, 1990.
14. Dr. Dray arranged for plaintiff to undergo repeat EMG and nerve conduction studies by Dr. Maloney, and an MRI of her cervical spine and subsequently referred plaintiff to a spine surgeon, Dr. Loomis, for further evaluation.
15. On March 10, 1993 plaintiff was examined by Dr. Loomis. At that time, plaintiff had a central HNP at C5-6, a slight bulge with neuroforaminal encroachment at C4-5 and a medial right sided bulge at C3-4 resulting from the incident of September 10, 1990, as well as continued symptomology related to bilateral carpal tunnel syndrome.
16. Plaintiff's symptoms attributable to bilateral carpal tunnel syndrome have continued and progressively worsened. Additionally, plaintiff continues to suffer from symptomology associated with the cervical condition.
17. Plaintiff's cervical condition which was diagnosed by Dr. Loomis in March of 1993 results in symptoms that are very similar to plaintiff's bilateral carpal tunnel syndrome symptoms and, consequently, it is difficult for the medical professionals who have been consulted regarding plaintiff's continued symptomology to neatly separate out her symptoms in order to attribute them specifically to either her bilateral carpal tunnel syndrome or to her cervical condition.
18. In March 1993, Dr. Loomis recommended that plaintiff undergo a diskectomy and cervical fusion of C5-6, the sole purpose of which would be to provide plaintiff with relief of symptoms associated with the cervical condition which is unrelated to plaintiff's claim for compensation giving rise hereto.
19. Since May 1993, plaintiff has been seen by Dr. Hamilton for pain management.
20. The credible evidence of record establishes that the treatment rendered to plaintiff by Drs. Dray, Maloney and Hamilton and the evaluation of plaintiff by Drs. Loomis and Maloney, were reasonably required to effect a cure, give relief or lessen the extent of plaintiff's disability related to bilateral carpal tunnel syndrome. Additionally, plaintiff is in need of continued medical care and treatment of symptoms associated with bilateral carpal tunnel syndrome, in order to effect a cure, give relief or lessen the extent of plaintiff's disability therefrom. Dr. Hamilton is in the best position to provide plaintiff with such continued medical care and treatment.
21. As a result of her bilateral carpal tunnel syndrome, plaintiff has been unable to earn any wages in any employment from October 29, 1991 to the close of the evidentiary record in this case.
22. Pursuant to N.C.G.S. § 97-31(12), an 8 percent partial impairment of the left hand and a 5 percent permanent partial impairment of the right hand result in 26 weeks of compensation following the end of the healing period in lieu of all other compensation. Inasmuch as plaintiff's period of total wage earning incapacity following the end of the healing period has exceeded 26 weeks, the greater recovery to plaintiff is continuing compensation for loss of wage earning capacity.
23. On October 28, 1991 plaintiff's average weekly wage was $282.77, yielding a compensation rate of $188.52.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. As a result of her employment with defendant, plaintiff developed bilateral carpal tunnel syndrome which is due to causes and conditions characteristic of and peculiar to her employment with defendant and which is not an ordinary disease of life to which the general public is equally exposed outside of the employment. Plaintiff, accordingly, has contracted an occupational disease. N.C.G.S. § 97-53(13); Booker v. DukeMedical Center, 297 N.C. 458 (1979).
2. As a result of her bilateral carpal tunnel syndrome, plaintiff was temporarily totally disabled from October 29, 1991 to the present and continuing, for which she is entitled to compensation at the rate of $188.52 per week for the aforementioned period and continuing for so long as so disabled, subject to a credit to defendants for any temporary total disability compensation paid heretofore. N.C.G.S. § 97-29; 97-52.
3. As a further result of her bilateral carpal tunnel syndrome, plaintiff sustained an 8 percent permanent partial disability to her left hand and a 5 percent permanent partial disability to her right hand entitling her to 26 weeks of compensation. However, inasmuch as plaintiff has sustained total disability for a period of time greater than 26 weeks since reaching maximum medical improvement on October 19, 1992, it is reasonable to infer that plaintiff would elect a more favorable remedy of continuing compensation for temporary total disability and, consequently, is entitled to no payment for permanent partial impairment. N.C.G.S. § 97-31(12); Whitley v. ColumbiaManufacturing Corp., 318 N.C. 89 (1986).
4. Plaintiff is entitled to have defendants pay all medical compensation incurred, or to be incurred, as a result of her bilateral carpal tunnel syndrome. N.C.G.S. § 97-2(19); 97-59;Hyler v. GTE Products Corp., 333 N.C. 258, 455 S.E.2d 698 (1993).
* * * * * * * * * * *
Based on the foregoing finding of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay plaintiff, on account of her temporary total disability, compensation at the rate of $188.52 per week from October 29, 1991 to the present and continuing for so long as so disabled, subject to a credit to defendants for any temporary total disability compensation paid heretofore. As much of said compensation as has accrued shall be paid in a lump sum, subject to a reasonable attorney fee hereinafter approved.
2. A reasonable attorney fee in the amount of 25 percent of the compensation benefits due under the above Award is hereby approved for plaintiff's attorney. Said attorney fee shall be paid out of the accrued benefits and out of the benefits that will hereafter accrue by defendants making direct payment to plaintiff's counsel of every fourth week of compensation payable under the terms of this Opinion and Award.
3. Defendants shall pay all medical compensation incurred, or to be incurred, as a result of plaintiff's bilateral carpal tunnel syndrome, in amounts approved by, or in accordance with the fee schedule established by the Industrial Commission.
4. Defendants shall pay the costs, including the previously authorized expert witness fees in the amounts of $125.00 for Dr. Dray, $235.00 for Dr. Loomis, $200.00 for Dr. Maloney, and $75.00 for Dr. Hamilton.
FOR THE FULL COMMISSION
 S/ _______________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ ____________________ THOMAS J. BOLCH COMMISSIONER
S/ ____________________ DIANNE C. SELLERS COMMISSIONER
CMV/cnp/mj 8/31/95