605 S.E.2d 567

**Teresa SHADWELL, Appellant,**

**v.**

**James CRAIGIE, M.D., Individually and as agent for Loris Surgical Associates and Loris Surgical Associates, Respondents.**

**No. 3883.**

Court of Appeals of South Carolina.

Heard June 8, 2004.

Decided Nov. 1, 2004.

Rehearing Denied Dec. 16, 2004.

Ralph J. Wilson, of Conway, for Appellant.

William W. Doar, Jr., of Georgetown, for Respondents.

PER CURIAM:

Teresa Shadwell appeals the trial court's grant of summary judgment in favor of James Craigie, M.D., and Loris Surgical Associates (collectively "Respondents") in this medical malpractice action. We affirm in part, reverse in part and remand.

## FACTS

In January 1996, Shadwell was referred to Dr. Craigie by her treating physician, Dr. Robert A. Ziff, because she was experiencing lower abdominal pain. Dr. Craigie ordered laboratory tests for Shadwell at Loris Hospital Laboratory prior to performing a colonoscopy. The lab results were reported to Dr. Craigie on January 25, 1996. The results showed Shadwell had an elevated creatinine level, indicating problems with her kidneys. Dr. Craigie performed a colonoscopy on Shadwell on January 26, 1996. Shadwell returned to Dr. Craigie's office for a follow-up examination on February 9, 1996, at which time she complained of abdominal cramps and diarrhea. Shadwell was scheduled to return on March 27, 1996, on a "needs basis—only if she continued to have complaints," but she did not appear for the appointment. Dr. Craigie had no further contact with Shadwell following the February visit. Dr. Craigie never informed Shadwell of the test results indicating problems with her kidneys, nor did he forward the results to Shadwell's treating physician, Dr. Ziff.

In January and February of 1998, while pregnant with her daughter, Shadwell underwent two twenty-four hour kidney tests at Loris Hospital at the direction of Dr. Ziff. These tests revealed her kidneys were functioning at only twenty percent of normal capacity. Following the birth of her daughter, Shadwell's kidney function began to deteriorate, at one point functioning at only eight percent. Because her kidneys were not functioning properly, Shadwell went on dialysis to assist in removing toxins from her blood. On August 14, 2000, Shadwell successfully underwent a kidney transplant.

In 2001, Shadwell filed suit against Dr. Ziff and other physicians who provided treatment during her pregnancy. One of the grounds for the lawsuit was that Dr. Ziff failed to

properly diagnose her condition after receiving the results from the 1998 kidney function tests.

During the course of preparing for the case against Dr. Ziff, the parties took several depositions including that of Shadwell, Dr. Ziff, and Dr. Craigie. It is not clear from the record when Shadwell learned of the January 1996 lab results showing elevated creatinine levels. During Dr. Craigie's August 17, 2001 deposition, he confirmed the January 1996 lab results. During Shadwell's September 12, 2001 deposition, she testified that she learned at Duke Hospital in late 1998 that she should have been made aware of prior lab results. It is not altogether clear whether she was referring to the results from Dr. Craigie's 1996 lab tests or from the tests performed early in 1998 during her pregnancy. During Dr. Ziff's October 17, 2001 deposition, he was shown the results from the January 1996 tests for the first time.

Shadwell commenced the current action against Dr. Craigie and Loris Surgical Associates on March 4, 2002, alleging, among other things, that Dr. Craigie was negligent in: (1) failing to discuss these lab results with her, and (2) failing to forward a copy of the results to Dr. Ziff, as her referring physician, or to inform any of Shadwell's other physicians of the abnormal results. Shadwell alleged in her complaint that she first became aware of Dr. Craigie's negligence when she received discovery in the prior case. Specifically, she stated "[t]hat until August 17, 2001, [she] was unaware that any duty had been breached by [Dr.] Craigie or that any negligence occurred."

Respondents answered the complaint with general denials and asserted that the statute of limitations governing medical malpractice actions barred the case. Accordingly, Respondents moved to have the case dismissed under Rule 12(c), SCRCP. On July 8, 2002, the court denied the motion finding it to be premature. Respondents then filed a motion for reconsideration. The primary dispute at the hearing on the motion for reconsideration concentrated on whether the action was filed within the six-year time period established by the statute of repose.

On September 23, 2002, the trial court issued an order denying the motion for reconsideration holding that a genuine

issue of material fact existed concerning when the physician-patient relationship ended between Shadwell and Dr. Craigie. Thus, the trial court found that an issue of fact existed as to whether Shadwell's action was barred by the statute of repose. Following receipt of this order, Respondents moved pursuant to Rule 59(e), SCRCP to alter or amend, seeking a ruling as to whether the three-year statute of limitations also acted as a time bar to Shadwell's action.

In an order dated November 15, 2002, the trial court granted Respondents' motion for summary judgment. Based on the deposition testimony taken in Shadwell's prior lawsuit, the court ruled that by the end of 1998, Shadwell "was aware of sufficient facts that would have put her on notice of the existence of a cause of action against Dr. Craigie for allegedly not informing her of the results of the lab tests performed on her on January 24, 1996." Therefore, because Shadwell did not file her suit against Dr. Craigie until March 2002, her action was barred by the three-year statute of limitations.

Shadwell filed a motion to alter or amend arguing the trial court erred in dismissing her claims. Shadwell argued that she raised two claims in her complaint: (1) that Dr. Craigie committed malpractice in failing to inform her of the lab results; and (2) that Dr. Craigie committed malpractice in failing to inform her referring physician of the lab results. Because she did not learn until Dr. Ziff's October 17, 2001 deposition that Dr. Craigie failed to inform him of the test results, Shadwell argued the trial court erred in also dismissing her second claim as barred by the statute of limitations. Shadwell argued that these two allegations of negligence constituted separate and independent causes of action, and thus, the court erred in dismissing her case. The trial court denied Shadwell's motion by order dated November 25, 2002. This appeal followed.

## STANDARD OF REVIEW

"In reviewing the grant of a summary judgment motion, this Court applies the same standard which governs the trial court under Rule 56(c), SCRCP." *Fisher v. Stevens,* 355 S.C. 290, 294, 584 S.E.2d 149, 151 (Ct.App.2003). Accordingly, summary judgment is appropriate when " 'there is no genuine

issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.' " *Id.* (quoting Rule 56(c), SCRCP). "In determining whether any triable issue of fact exists, as will preclude summary judgment, the evidence and all inferences which can be reasonably drawn therefrom must be viewed in the light most favorable to the nonmoving party." *McNair v. Rainsford,* 330 S.C. 332, 341, 499 S.E.2d 488, 493 (Ct.App.1998).

## LAW/ANALYSIS

### I

Shadwell argues the trial court erred in granting summary judgment because the record does not support the trial court's finding that she should have known about Dr. Craigie's failures by late 1998. Regardless of when Shadwell learned of Dr. Craigie's failures, the record in this case supports a finding that Shadwell's cause of action for failure to inform her of the test results was barred by the statute of repose.[1]

Medical malpractice actions are governed by a three-year statute of limitations and a six-year statute of repose. The statute provides:

In any action, other than actions controlled by section (B), to recover damages for injury to the person arising out of any medical, surgical, or dental treatment, omission, or operation by any licensed health care provider ... acting within the scope of his profession must be commenced within three years from the date of the treatment, omission, or operation giving rise to the cause of action or three years from date of discovery or when it reasonably ought to have been discovered, *not to exceed six years from date of occurrence,* or as tolled by this section.

---

1. An appellate court may affirm a trial court's order based on any grounds found in the record. Rule 220(c), SCACR; *I'On, L.L.C. v. Town of Mount Pleasant,* 338 S.C. 406, 420, 526 S.E.2d 716, 723 (2000) (holding that an appellate court may affirm the circuit court's ruling using any additional reasons that are both raised by the respondent's brief and found within the record). Respondents also argue this basis for affirmance in their brief.

S.C.Code Ann. § 15–3–545(A) (Supp. 2003) (emphasis added).[2]

■ Respondents contended the trial court properly granted summary judgment in their favor because the occurrence took place more than six years prior to the commencement of Shadwell's action. On the other hand, Shadwell argued that the statute of repose did not bar her action against Dr. Craigie because the time period was tolled while she was under Dr. Craigie's continuous treatment. Thus, Shadwell asserted the "occurrence" did not happen until after she missed her March 27, 1996 appointment.

Our supreme court has recently addressed the continuous treatment doctrine. In *Harrison v. Bevilacqua*, 354 S.C. 129, 580 S.E.2d 109 (2003), the guardian for James L. McLean sued the Department of Mental Health and various physicians for negligence in their treatment of McLean from 1982 until his discharge in 1995. The court declined to adopt the continuous treatment/continuous tort doctrine, stating that "judicial adoption of the continuous treatment rule would run afoul of the absolute limitations policy the Legislature has clearly set" through statute, including the statute of repose. *Harrison*, 354 S.C. at 138, 580 S.E.2d at 114; *see also Hoffman v. Powell*, 298 S.C. 338, 339–340, 380 S.E.2d 821, 821 (1989) (holding that the statute of repose "constitutes an outer limit beyond which a medical malpractice claim is barred, regardless of whether it has or should have been discovered."); *Dunbar v. Carlson*, 341 S.C. 261, 269, 533 S.E.2d 913, 917 (Ct.App.2000) ("[T]he statute of repose imposes an outer limit for filing a medical malpractice action, regardless of when it is discovered."). Thus, the statute of repose in the present case was not tolled by the time period between Shadwell's February 1996 and March 1996 appointments, presumably a period of time she was under the care of Dr. Craigie.

---

2. In *Langley v. Pierce*, 313 S.C. 401, 438 S.E.2d 242 (1993), our supreme court discussed the tolling language in S.C.Code Ann. § 15–3–545(A). The court noted that the tolling language in subsection (A) "clearly indicates that the *only* tolling of § 15–3–545(A) intended by the legislature is that contained in subsection (D)." *Langley*, 313 S.C. at 403, 438 S.E.2d at 243. Subsection (D) provides that the statute will be tolled to a certain extent for minors injured by healthcare providers. S.C.Code Ann. § 15–3–545(D) (Supp. 2003).

■ We need only determine the time of the "occurrence" in order to determine if the statute of repose barred this cause of action. This court has previously determined the date of occurrence in a medical malpractice claim. *O'Tuel v. Villani,* 318 S.C. 24, 455 S.E.2d 698 (Ct.App.1995), *overruled on other grounds by I'On, L.L.C. v. Town of Mount Pleasant,* 338 S.C. 406, 526 S.E.2d 716 (2000). In *O'Tuel,* parents alleged their child was injured during birth when they discovered he had certain physical and learning disabilities when he entered school. They sued the delivering physician nine years after the child was born. This court found that since the date of "occurrence" was the date of the child's delivery, the statute of repose barred the parents' action against the physician. *O'Tuel,* 318 S.C. at 27, 455 S.E.2d at 700 (holding that "while the parents" claim may have accrued when Adam started school, their claim is nonetheless barred because it was instituted more than six years from the date of occurrence, in this case, the date of Adam's birth").

In the present case, the occurrence happened when Dr. Craigie failed to inform Shadwell about the elevated creatinine levels discovered in her January 1996 test results. Dr. Craigie knew about the results before the January 26, 1996 colonoscopy. Dr. Craigie should have informed Shadwell within a reasonable time after learning the results, either at the time of the colonoscopy, or at the latest, at her follow-up appointment on February 9, 1996. Since he failed to do so, we agree with the trial court that the occurrence in this case is no later than the date of Shadwell's last appointment, February 9, 1996. Accordingly, the six-year statute of repose for Shadwell's cause of action against Dr. Craigie for his failure to inform her of the test results expired prior to the March 4, 2002 filing of the action against Dr. Craigie, regardless of when Shadwell discovered his omission.

## II

■ Shadwell also argues the trial court erred in not specifically addressing her "second cause of action" of Dr. Craigie's failure to inform Dr. Ziff, her treating physician, of the 1996 test results.

As noted, among other allegations, Shadwell averred in her complaint that Dr. Craigie committed two acts of negligence: (1) failing to inform her of the test results, and (2) failing to forward a copy of the results to Dr. Ziff as her referring physician. On appeal, Shadwell argues her second allegation of negligence constitutes a separate cause of action. She, therefore, argues the evidence shows she could not have been aware that Dr. Craigie failed to inform Dr. Ziff of the test results until Dr. Ziff testified to as much in his deposition on October 17, 2001. Accordingly, since she filed her complaint in March 2002, the statute of limitations would not act as a bar to this cause of action.[3]

To support her contention that Dr. Craigie's failure to inform her treating physician of the test results constitutes a separate cause of action, Shadwell relies on this court's decision in *Jernigan v. King*, 312 S.C. 331, 440 S.E.2d 379 (Ct.App.1993). In *Jernigan*, a physician admitted the plaintiff to a hospital after plaintiff complained of severe headaches. *Id.* at 332, 440 S.E.2d at 380. While covering for plaintiffs' admitting physician, another doctor was called to answer an emergency code from plaintiff's room. After resuscitating plaintiff, this physician ordered a number of tests be performed including a CT scan. Thereafter, the admitting physician resumed care for plaintiff. *Id.*

Neither physician reviewed the results of the CT scan, which revealed plaintiff was suffering from intracranial hemorrhaging. *Id.* Four days later, while again covering for plaintiff's admitting physician, the same doctor who ordered the first CT scan ordered a second. Upon receiving and reviewing the results, the doctor performed immediate surgery to

---

**3.** Although Respondents suggest this argument is not preserved because Shadwell did not raise it at the time the motion for summary judgment was heard, we disagree. Both allegations of negligence were included in Shadwell's complaint. Furthermore, Shadwell's position at the summary judgment hearing was to argue against Respondents' assertion that her action was time barred, not to support her allegations of negligence. Finally, Shadwell did specifically raise this claim in her Rule 59(e) motion submitted after receipt of the court's summary judgment order. Moreover, in denying Shadwell's motion for reconsideration, the court found: "that both parties fully expounded all issues raised in [Shadwell's] Motion for Reconsideration at the previous hearing." We therefore find the issue is preserved for our review. *See Staubes v. City of Folly Beach*, 339 S.C. 406, 529 S.E.2d 543 (2000).

remedy the problem. *Id.* at 332–33, 440 S.E.2d at 380. Thus, the essence of plaintiff's claim was that the delay in treatment caused permanent brain damage. *Id.* at 333, 440 S.E.2d at 380.

Specifically, the plaintiff averred that once the physician ordered the CT scan the first time, he had an obligation to review the results, or at the very least, to see that another physician did. *Id.* Although this Court eventually found against the plaintiff, in reaching this conclusion, we stated: "[w]e assume, *without deciding*, [plaintiff] is correct that once [the operating physician] ordered a CT scan on August 3, he was under a duty to see to it that the scan was performed and to see the results, or to see to it that someone else evaluated the results." *Id.* at 333, 440 S.E.2d at 381 (emphasis added).

From this statement, Shadwell asserts we recognized a separate and distinct cause of action for a physician's failure to inform a patient's primary physician of pertinent test results. Shadwell, however, fails to recognize that in *Jernigan* we specifically declined to rule on the issue. Accordingly, as a review of our case law uncovers a lack of authority on point, the question is a matter of first impression.[4]

Here, the trial court summarily disposed of this issue, which could have significant implications concerning the liability to which consulting physicians may be exposed. Additionally, application of the statute of limitations and/or the statute of repose to any cause of action Shadwell may have for Dr. Craigie's failure to report the test results to Dr. Ziff may differ from her other cause of action. Moreover, the standard for reporting such findings and proximate cause are issues that need to be developed further. We, thus, hold the trial court improperly disposed of the question by granting summary judgment. *ML–Lee Acquisition Fund, L.P. v. Deloitte & Touche,* 320 S.C. 143, 153, 463 S.E.2d 618, 624 (Ct.App.1995) (stating that although all issues of novel impression do not require a trial, summary judgment is inappropriate where further inquiry into the facts is desirable to clarify application of the law); *See Shea v. State Dept. of Mental Retardation,* 279 S.C. 604, 611, 310 S.E.2d 819, 822 (Ct.App.1983) ("If the

---

4. In fact, Respondents argue in their brief that it is a novel issue.

statute's application is not absolutely clear as a matter of law, [the] question should not be decided without fully developing the facts by means of trial.") *overruled on other grounds by McCall v. Batson,* 285 S.C. 243, 329 S.E.2d 741 (1985).[5]

## CONCLUSION

Shadwell's cause of action based on the failure of Dr. Craigie to inform her of the test results is barred by the statute of repose. Because the issue of whether the respondents are liable to Shadwell for Dr. Craigie's failure to notify Dr. Ziff of the test results needs further factual development and is a novel issue, we hold the trial court erred in granting summary judgment. Accordingly, the trial court's order is reversed as to the latter issue, and this case is remanded to the trial court for a determination as to whether Dr. Craigie's failure to notify Dr. Ziff of the abnormal test results constituted actionable negligence for which Shadwell may recover against the Respondents.

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED.**

HEARN, C.J., STILWELL, J. and CURETON, A.J., concur.

---

**5.** While *Jernigan* did not recognize a separate cause of action for failure of a consulting physician to notify the referring physician of a patient's abnormal test results, we suggest there is a duty on the part of the consulted physician to report abnormal test results to the treating physician if the results indicate a need for further follow-up or treatment. Other courts have likewise concluded such a duty exists. *See Sinclair v. Roth,* 356 N.J.Super. 4, 811 A.2d 460, 465 (2002) ("There is little doubt that the specialist has a duty to advise the referring physician of his findings."); *Munoz v. South Miami Hospital, Inc.,* 764 So.2d 854, 856 (Fla.Dist.Ct.App.2000) ("[M]edical professionals must, under some circumstances, see to it that serious conditions which they know about [are] remedied either by themselves or by someone else competent to do so."); *Santos v. Kim,* 429 Mass. 130, 706 N.E.2d 658, 663 (1999) (finding that the director of a laboratory had a duty to report laboratory test results to plaintiff's treating physician).