SUMTER BUILDING AND LOAN ASSOCIATION v. WINN.

1. BUILDING AND LOAN ASSOCIATION.—A building and loan association which, in violation of its charter, passes a resolution to divide the assets before the time fixed in its charter for dissolution, forfeits its right to maintain a foreclosure suit against a borrowing member, who refuses to pay monthly dues and interest after such dissolution.

2. USURY.—The contract in this instance is usurious, and the complaint should be retained, so that the defendant may obtain judgment on his counter-claim for usurious interest collected.[1]

Before TOWNSEND, J., Sumter, January, 1895. Modified.

[1] The matter of usury in loans by building associations is considered in a note to *Reeve v. Ladies' Building Association* (Ark.), 18 L. R. A., 129.

Action by Sumter Building and Loan Association against D. James Winn. The following is the Circuit decree:

This is an action for the foreclosure of a mortgage. D. J. Winn was a member of the plaintiff corporation. In December, 1885, he borrowed money from the association. He bid off eight shares ($1,600) at 41¼ per cent. premium. From this transaction he actually received but $940, but gave his bond for $1,600. This included the $940 actually received and the premium, $660, and a mortgage to secure it. His eight shares were also assigned to plaintiff to secure this loan. In May, 1893, the association resolved to cease business, directing non-borrowers to cease paying their monthly dues, and borrowers to continue to pay $1 per month per share till December, 1893. The defendant had paid all dues promptly up to the time referred to, May, 1893, and refused to pay any longer. And I think he was right. The fact that he was a borrower did not subject him to greater burdens than those who were not borrowers, except that he had to pay a greater amount each month by way of interest than if he had been a non-borrower. The plaintiff brought this action to foreclose said mortgage, claiming that there was a certain amount due, and that certain instalments would continue to fall due until each share would be worth $200. The defendant denies generally, pleads usury, asks for an accounting, and sets up a counterclaim. The contract is not usurious, because the interest which was paid was paid upon the $660, as well as upon the $940, by the defendant's own agreement; the premium, it is true, is a mere myth, until in the course of time it may be credited by the earnings of the monthly payments; but as he agreed to pay interest on it, he can't say it is usury to do so. But, conceding the right to bring the action, how can the plaintiff claim that there is $808 due on the bond, and that instalments will become due monthly until the shares are worth $200. Now that the association has ceased to lend money, the shares will never be worth $200, nor can the plaintiff claim any part of the premium. All that

the plaintiff can claim is $940, less the value of the stock at the time the plaintiff ceased to do business, to wit: May, 1893. Suppose that in one hour after the defendant made his bond and obtained the $940, the plaintiff had resolved (as it did in May, 1893,) to cease business immediately, what would the defendant have owed the plaintiff? Why, evidently, only the $940 which he had just obtained, less the book value of his stock, without any premium or monthly payments or penalties. And so when the plaintiff ceased to do business in May, 1893, the defendant owed $940, less the book value of each share, and nothing more. But, according to my view of the case, the plaintiff had no cause of action. By its resolution of May, 1893, it violated its contract with the defendant. By the said contract the defendant had a right to go on paying a certain amount each month till one of two things happened, viz: till each share would be worth $200 or until the expiration of ten years from the creation of the plaintiff corporation. It had no right to stop when the shares were worth $140 or $128. It made no such contract, and hence had no right of action. It is, thererefore, ordered, adjudged, and decreed, that the complaint be dismissed.

From this judgment the defendant appeals, on the following exceptions:

1. That it is respectfully submitted that his Honor committed error in holding as a matter of law that the contract in this case was not usurious, because the interest paid was by the defendant's own agreement; and it is respectfully submitted that the contract is usurious, and the presiding Judge was in error in not so holding, and allowing the counter-claim of defendant.

2. That having found that the plaintiff was at least entitled to this $940, less the value of the stock pledged by the defendants as collateral security, it being admitted that the value of the stock was more than $128 per share (eight shares), as that amount had already been distributed to

non-borrowers, this being $84 more than the debt of the defendant, it was error in the presiding Judge to have dismissed the complaint without giving to the defendant a judgment for the excess due him on stock over his debt, or directing a reference to ascertain amount due, and giving the defendant the relief he was entitled to under his accounting clause of answer.

The plaintiff also appeals, upon the following exceptions:

1. Because it is respectfully submitted that his Honor erred in holding that the plaintiff had no cause of action against the defendant.

2. In holding that the resolution of May, 1893, violated the contract with the defendant.

3. In holding, as a matter of fact, that the plaintiff ceased to do business in May, 1893.

4. In dismissing the complaint of the plaintiff.

*Messrs. Lee & Moise*, for plaintiff, appellant.

*Mr. H. L. B. Wells*, for defendant, appellant.

Oct. 10, 1895. The opinion of the Court was delivered by

Mr. Justice Pope. It is made to appear by the "Case" that, in the year 1883, the defendant, D. James Winn, along with certain other citizens, induced the legislature of this State to incorporate them, their associates and successors, into what was called the Sumter Building and Loan Association, whose declared purpose it was to buy and sell real estate in the county of Sumter, in this State; to make loans of money secured by mortgage of real estate, and the hypothecation of bonds, stocks, and other choses and personal property, to its members and stockholders and others in its corporate name, whose capital stock should be 1,000 shares; said shares to be paid by successive monthly instalments of $1 on each share as long as the said association shall continue. The holders of such shares to be subject to such fines, penalties, and forfeitures for default in this

payment as the regulations and by-laws of such corporation may prescribe.   Among other things, the charter prescribed that, whenever the funds and assets of the association shall have accumulated to such an amount that upon a fair division thereof each stockholder, for each and every share of stock held by him or her, shall have received $200 on the value thereof in property or assets, and such division shall have been made, the said association shall cease and determine: *Provided, however,* That in case the said association shall not have closed its operations and affairs as above provided for within a shorter period, then this act shall not continue in force beyond ten years.   See 18 Stat. at Large, 604.   The plaintiff organized under its charter in the year 1885, the defendant being a shareholder.   In December, 1885, the sum of $1,600 was sold, and he became the purchaser at a little more than forty-one cents to the dollar as a premium; hence he received $960 in cash, leaving a deferred payment of $640.   To secure this loan he pledged eight shares of his stock in said association, and mortgaged ten acres of land, whereon was his residence, to secure said loan.   This shareholder, borrower, paid, on the 15th of each month, $8 on his eight shares and $8 as interest, which was regularly done until the 15th May, 1893, when he refused to make further payments, because on that day the association passed a resolution by which they ordered all non-borrowers to cease making their monthly payments on their shares, and also to receive $128 per share of their stock, while the borrowers were required to pay $1 per share until December 15, 1893, when they should then cease such payments.

According to the by-laws, three months of default should happen before suit should be brought against a borrower, so that on September 19, 1893, an action for foreclosure was brought against Mr. Winn.   This relief, in his answer, he denied the plaintiff was entitled to, setting up, in his answer, that the loan to him was usurious, and also setting up a counter-claim for the usurious interest he claimed he

had already paid.   Under an order of Court, testimony was taken by the master.   The action came on then to be heard before his Honor, Judge Townsend, whose decree should be .reported, as well as the exceptions thereto by both plaintiff and defendant.   The decree of Judge Townsend overruled the plea of usury, but decided that the plaintiff had broken its contract with defendant, and, therefore, had no right to foreclose its mortgage.   Of course, the exceptions of the plaintiff seek to reverse so much of the decree as decides that it has no cause of action; while the defendant, on the other hand, assails the decree for overruling the defense of usury, and denying the counter-claim for usurious interest.

We find no difficulty in reaching a conclusion on either of the contentions.   By the charter, as well as the by-laws of this association, its life for ten years was to be devoted to the mutual benefit of its members, whether borrowers or non-borrowers, to the end that each share of the par value of $100 should by its earnings be worth in money, or money's worth, $200.   Within the period of ten years, therefore, the association could not voluntarily close up its business until each share of stock was worth $200.   In May, 1893, when the resolution was passed to divide out its cash assets among its non-borrowing members, said shares, according to the testimony, were only worth $128, and, if all the paper was collected, such shares could not exceed the value of $140 per share.   This resolution, which was carried into effect by the plaintiff association, was a palpable infraction of its contract.   Thereby the plaintiff lost its right to sue the defendant for non-payment of monthly instalments and interest, and to foreclose this mortgage.   The principle decided in *Buist* v. *Bryan*, 44 S. C., 121, is applicable here.

So far as defendant's contention as to usury is concerned, he is in no plight to ask a court of equity to enforce his claim of usury.   But we understand the defendant, as appellant, to contend that, inasmuch as his stock (eight shares)

is worth more than the debt of $960, the Circuit Judge erred in dismissing the action without giving him a judgment against plaintiff for this difference. No such question was raised by the pleadings or seems to have been presented to the Circuit Judge. We cannot entertain a proposition imputing error to the Circuit Judge, when his decree is silent on such propositions, or the pleadings are silent thereon, or when it does not appear that the question was submitted to the Circuit Judge for his decision. It seems to me that the Circuit judgment should be affirmed generally, and that it should be the judgment of this Court that the judgment of the Circuit Court be affirmed; but the majority of the Court think that the plaintiff is entitled to no relief, but that the Circuit Judge should have retained the cause, to the end that the defendant might obtain judgment upon his counter-claim for damages growing out of the usurious interest charged by the plaintiff on its loan of money to the defendant, and to this extent the Circuit judgment should be reversed. I cannot hold with this last view, for, in my judgment, the defendant in equity is entitled to no such relief. He has obtained from others this usurious interest, which has entered into the value of the shares he holds of the capital stock of this building and loan association. He should be required to do unto others as he now claims this association should do unto him, before the latter should be allowed unto him. Hence I dissent as to this conclusion of the majority of the Court.

It is the judgment of this Court, that so much of the judgment of the Circuit Court as denies a right of action herein to the plaintiff be affirmed, but as much thereof as denies to the defendant a judgment against the plaintiff for usurious interest, be reversed, and that for this purpose the cause be remanded to the Circuit Court.

Mr. Chief Justice McIver. I concur in so much of this opinion as adjudges that there was no error on the part of the Circuit Judge in holding that the plaintiff has no

cause of action against this defendant; but I am unable to agree that there was no error in rejecting defendant's counter-claim for double the sum paid by him as interest in excess of the lawful rate. It seems to me clear that the transaction, let it be disguised as it may be, was usurious. The sum actually loaned was only $940, and upon that sum more than the lawful rate of interest has been paid by the defendant, and for that excess it seems to me that defendant should, under the statute, have judgment on his counter-claim. I think, therefore, that to this extent the judgment below should be reversed and the case remanded, for the purpose of enabling defendant to obtain judgment for the sum to which he is entitled.

Mr. Justice Gary. I concur in the opinion of Chief Justice McIver. But the reason why I think the plaintiff has no cause of action against the defendant is because the contract is usurious, and more than the sum actually loaned, without interest, has been paid.