22853

CHRIS J. YAHNIS COASTAL, INC., a South Carolina corporation, Respondent v. STROH BREWERY COMPANY, an Arizona Corporation; G. Heileman Brewing Company, Inc., a Corporation; All Brand Importers, Inc., a Corporation; Grand Strand Beverage Corporation, a South Carolina Corporation; Howard G. Oliver, Jr., Individually; and Stevens Corporation, a South Carolina Corporation, Defendants. GRAND STRAND BEVERAGE CORPORATION, a South Carolina Corporation; and Howard G. Oliver, Jr., Defendants and Third-Party Plaintiffs v. ADOLPH COORS COMPANY, a Corporation; and Pabst Brewing Company, a Corporation, Third-Party Defendants, of whom Grand Strand Beverage Corporation, and Stroh Brewery Company are Appellants, and Chris J. Yahnis Coastal, Inc., and Stevens Corporation are Respondents.

(368 S. E. (2d) 64)

Supreme Court

*Thomas S. Tisdale, Jr.*, and *Timothy W. Bouch*, of *Young, Clement, Rivers & Tisdale*, Charleston, *for appellant Stroh Brewery Co.*

*R. W. Dibble, Jr.*, of *McNair Law Firm*, and *Robert E. Stepp*, of *Glenn, Irvin, Murphy, Gray & Stepp*, of Columbia, *for appellant Grand Strand Beverage Corp.*

*John C. Thompson* and *Emma Ruth Brittain*, of *Thompson, Henry & Gwinn, P.A.*, of Conway, *for respondent Yahnis.*

*A. Hoyt Rowell, III*, and *Fred Thompson, III*, of *Scardato & Thompson*, of Charleston, *for respondent Stevens Corp.*

Heard Feb. 1, 1988.

Decided April 4, 1988.

CHANDLER, Justice:

This appeal involves an attempt by a brewer (producer) of beer to exercise, pursuant to S. C. Code Ann. § 61-9-1040(1) (1976), its preemptive right to purchase the interest of a beer wholesaler. The Circuit Court held the attempt ineffective. We affirm.

## I. FACTS

The Stevens Corporation (Stevens), a licensed wholesaler, distributed beer in the Myrtle Beach area under franchise agreements with several beer producers, including the Stroh Brewing Company (Stroh). In April 1985, Howard Oliver (Oliver), a beer wholesaler in the Myrtle Beach area, approached Stevens about purchasing its assets. Stevens rejected an offer because of reservations about Oliver's financial condition.

In the Fall of 1985, Stevens began negotiating a sale with Chris J. Yahnis (Yahnis), a Florence area wholesaler. On December 9, 1985, Stevens and Chris J. Yahnis Coastal, Inc. (Coastal), a corporation controlled by Yahnis, executed an Asset Purchase Agreement. Under the contract, Stevens agreed to sell Coastal certain assets, including its wholesale distributorship franchise agreements.

During the following week Stevens notified all producers of the proposed sale.

On February 7, 1986, Stroh advised Stevens of its disapproval of the proposed sale to Coastal, and of its intention to exercise rights under § 61-9-1040(1) to purchase the Stevens assets. Stroh further proposed to assign its right-to-purchase to Grand Strand Beverage Corporation (Grand Strand), a wholesale distributorship to be formed by Oliver.

Notwithstanding Stroh's opposition, Stevens sold its assets to Coastal on April 5, 1986.

When informed of the sale, Stroh, and other producers as well, refused to ship their products to Coastal. Subsequently, Coastal commenced this action for injunction and monetary relief. It also obtained a temporary injunction (1) preventing Grand Strand from distributing beer of all producers in the litigation, and (2) requiring the producers to ship to Coastal during the pendency of the lawsuit.

Thereafter, the Circuit Court granted motions of Coastal and Stevens for partial summary judgment. It concluded that Stevens' conveyance to Coastal was valid and that the producers' subsequent termination of their wholesaler agreements was invalid.

Stroh and Grand Strand appeal.

## II. DISCUSSION

It is necessary to an understanding of this litigation that we review the two statutes enacted by the General Assembly which impact upon the rights and obligations of beer producers and beer wholesalers.

The first is § 61-9-1040(1), a 1974 statute.[1] Its obvious purpose is to permit a wholesaler to sell and transfer his franchise agreement to a purchaser for the highest and best price on the open market while, at the same time, affording a producer the means whereby it can protect itself against a purchaser whom it may deem undesirable.

The concern of the producer is served by provisions which give to it the right to preempt any proposed sale of the wholesaler's business by offering to purchase that business "upon the same terms and conditions as such interest would have been transferred to the prospective purchaser."

In short, § 61-9-1040(1) assures a selling wholesaler the highest market value of his business, while giving to the producer an option to either purchase the business itself on matching terms, or continue furnishing beer to the new wholesaler who has purchased the business.

Stroh contends that it has complied with § 61-9-1040(1)

---

[1] The text of the section reads:

(1) Except as hereinafter provided, any proposed sale of an interest in the business carried on by any beer wholesaler which under the laws of this State would require that the purchaser obtain a permit to operate as a beer wholesaler shall be subject to the approval of the purchaser by the Alcoholic Beverage Control Commission as an applicant for a permit authorizing the sale of beer. If the application of such prospective purchaser for such permit is approved, it shall be unlawful, notwithstanding the terms, provisions or conditions of any contract, written or oral, or the franchise agreement between such beer wholesaler and the registered producer, for any registered producer to fail or refuse to approve the aforedescribed transfer or change of ownership; *provided, further,* that in the case of any proposed sale with respect to which the purchaser has been approved by the Alcoholic Beverage Control Commission, the registered producer shall have the right to require that the interest in the business carried on by the beer wholesaler be transferred to the registered producer upon the same terms and conditions as such interest would have been transferred to the prospective purchaser. If the registered producer shall not, within sixty days after receipt of notification by certified mail of such proposed sale, notify the beer wholesaler by certified mail of the exercise of such right by the registered producers, such right may not thereafter be exercised. [Emphasis in original].

and, accordingly, is entitled to an Order requiring Stevens to sell to Stroh's assignee, Grand Strand. Coastal and Stevens disagree, and claim that Stroh has failed in several particulars to comply with material requirements of the statute.

It is not necessary that we review the record to determine this evidentiary dispute. Whether Stroh has complied with § 61-9-1040(1) is rendered moot by S. C. Code Ann. § 61-9-315(b) (Supp. 1986).[2] This statute, enacted in 1980, prohibits beer producers from holding "any interest whatsoever in any beer business of any person holding a wholesale permit."[3]

Stevens and Coastal contend that the effect of § 61-9-315(b) is to nullify the right of preemptive purchase contained in § 61-9-1040(1). We agree.

Statutes in apparent conflict should, if reasonably possible, be construed so as to allow both to stand and to give effect to each. *Powell v. Red Carpet Lounge*, 280 S. C. 142, 311 S. E. (2d) 719 (1984); *Stone & Clamp, General Contractors v. Holmes*, 217 S. C. 203, 60 S. E. (2d) 231 (1950). If, however, the statutes are incapable of any reasonable reconcilement, the last statute passed will prevail, so as to impliedly repeal the earlier statute to the extent of the repugnancy. *City of Newberry v. Public Serv. Comm'n*, 287 S. C. 404, 339 S. E. (2d) 124 (1986); *Ward v. Cobb*, 204 S. C. 275, 28 S. E. (2d) 850 (1944); *Pearson v. Mills Mfg. Co.*, 82 S. C. 506, 64 S. E. 407 (1909).

Here, § 61-9-315(b), in plain language, prohibits a pro-

---

[2] The text of this section reads:

   (b) A manufacturer or brewer of beer, ale, porter or other malt beverages or any person who imports such products produced outside the United States shall not have any interest whatsoever in any beer business of a person holding a wholesale permit or holding a retail permit or in any partnership or corporation for the use and benefit of which such wholesale or retail permit is held.

[3] In 1987, by amendment of § 61-9-315, the General Assembly strengthened the language prohibiting a producer from owning or operating a wholesale beer business. Subsection (E) now reads in part:

   (E) A manufacturer, brewer, and importer of beer are declared to be in business on one tier, a wholesaler on another tier, and a retailer on another tier. Any person or entity in the beer business on one tier, or anyone acting directly or indirectly on his behalf, *shall not have any ownership or financial interest* in the beer business operation on another tier.... [Emphasis supplied].

ducer from having "any interest whatsoever" in a wholesale beer business. It is in direct conflict with that portion of § 61-9-1040(1) which gives the producer the preemptive right to acquire the interest of a wholesaler. By implication, § 61-9-315(b) repealed § 61-9-1040(1) to the extent of this conflict.

Stroh was without a legal basis to challenge the sale of Stevens to Coastal. Accordingly, the grant of partial summary judgment is affirmed.

Affirmed.

GREGORY and FINNEY, JJ., and CURTIS G. SHAW and JOHN P. GARDNER, Acting Associate Justices, concur.

