526 S.E.2d 716

**I'ON, L.L.C., formerly known as The Graham Company, Respondent,**

v.

**TOWN OF MT. PLEASANT, Respondent,**

v.

**James A. Renneker and Henry G. Thomas, IV, Appellants.**

No. 25048.

Supreme Court of South Carolina.

Heard Dec. 1, 1999.

Decided Jan. 17, 2000.

Stephen P. Groves, Sr., Jonathan L. Yates, and Stephen L. Brown, all of Young, Clement, Rivers & Tisdale, L.L.P., Charleston, for appellants.

G. Dana Sinkler and Andrea H. Duenas, both of Warren & Sinkler, Charleston; and Stephen A. Spitz of Columbia, for respondent I'On, L.L.C.

R. Allen Young of Mt. Pleasant, for respondent Town of Mt. Pleasant.

WALLER, Justice:

This case raises the novel issue of whether zoning by initiative and referendum is allowed in South Carolina. Respondent I'On, L.L.C. (Developer) brought a declaratory judgment action challenging the validity of a proposed voter referendum on a zoning matter in the Town of Mt. Pleasant (Town). The circuit judge struck down the proposed referendum after a non-jury trial. James A. Renneker and Henry G. Thomas, IV (appellants), who participated in a citizens' effort to block the project, appeal. We affirm.

## FACTS

In 1995, Developer asked the Mt. Pleasant Board of Planning and Zoning (the Zoning Board) to rezone a 243–acre tract from R–1 to Planned Development (PD). R–1 zones are restricted primarily to single-family houses, while PD zoning allows a mix of residential and commercial uses. Developer wanted to build a more traditional neighborhood containing a variety of development, including commercial locations. PD zoning of the tract was allowed under the land use master plan Town had approved several years earlier. The Zoning Board recommended approval of Developer's rezoning request but the Town Council, which makes the final decision on all zoning matters, denied it in a 5–4 vote.

In 1997, Developer resubmitted its rezoning request after modifying portions of the project. The Zoning Board again recommended approving the request. Many Town residents

spoke for and against the project at two council meetings. The Town Council gave final approval to an ordinance granting PD zoning to the tract in a 6–3 vote March 11, 1997.

Citizens opposed to the project immediately launched a petition drive to submit a proposed ordinance to the Town Council that would restore the zoning of the tract to R–1 or, if the Town Council rejected the proposed ordinance, to submit the matter to voters in a referendum. *See* S.C.Code Ann. § 5–17–10 and –30 (1976 & Supp.1998) (establishing initiative and referendum process). Some 4,500 residents signed the petition. In July 1997, Charleston County voter registration officials certified that the petition contained more than the fifteen percent of the qualified Town electors required by Section 5–17–10.

Developer filed a lawsuit that included a declaratory judgment action and a motion for a temporary restraining order, seeking to prevent the Town Council from taking any action on the petition. A circuit judge issued a temporary restraining order. After a hearing, another circuit judge lifted the TRO to allow the Town Council to take whatever action it deemed necessary on the petition.

In August 1997, the Town Council voted 6–3 to reject the proposed ordinance and instead approved a resolution placing a revised version of the ordinance on the ballot in a special election set for November 1997. The referendum question stated:

SHOULD THE TOWN COUNCIL OF THE TOWN OF MOUNT PLEASANT REPEAL ZONING ORDINANCE NUMBER 97010 PASSED ON *MARCH 11, 1997,* WHICH REZONED THE APPROXIMATELY 243 ACRES MORE OR LESS, BORDERED BY HOBCAW CREEK AND MATHIS FERRY ROAD, KNOWN AS THE JORDAN TRACT, *AND TO BE KNOWN AS I'ON,* FROM R–1, SINGLE FAMILY RESIDENTIAL TO PD, PLANNED DEVELOPMENT, AND AT THE SAME TIME HAVE THE JORDAN TRACT REVERT TO R–1 ZONING?

The resolution stated the italicized information was modified or added to the proposed ordinance contained in the petition in order to correct the ordinance date and identify Developer.

The circuit judge subsequently held a non-jury trial and struck down the proposed referendum. The judge based his ruling on the sole ground that zoning matters could be decided in Town only under the specific procedures · set forth in Chapter 7 of Title 6, which Town has adopted in its zoning code, and not by the general initiative and referendum process contained in Chapter 17 of Title 5. The judge believed the initiative and referendum process was totally at odds with the detailed procedures set forth in Chapter 7 of Title 6; therefore, the Legislature could not have intended to allow voters to decide complex matters such as zoning in a referendum. The judge denied appellants' motion for reconsideration and reiterated he was deciding the case only on the one ground explained in the original order.

## STANDARD OF REVIEW

This case, in which the essential facts are largely undisputed, raises a novel question of law.[1] We are free to decide this question of law with no particular deference to the lower court. *See* S.C. Const. art. V, §§ 5 and 9; S.C.Code Ann. §§ 14–3–320 and –330 (1976 & Supp.1998); S.C.Code Ann. § 14–8–200 (Supp.1998) (granting Supreme Court and Court of Appeals the jurisdiction to correct errors of law in both law and equity actions).

## ISSUES

1. Did the circuit judge err in ruling that zoning matters in Town may be decided only under the specific procedures set forth in Title 6 and not by the general initiative and referendum process contained in Title 5?

2. Must a party who prevails in the lower court raise an "additional sustaining ground" to the judge and obtain a

---

1. In *Burnside v. Town of Arcadia Lakes*, 271 S.C. 191, 246 S.E.2d 234 (1978), the Court upheld the trial court's denial of Burnside's pretrial motion to dismiss a defense relating to a zoning referendum the town already had held. It was too early in the litigation to dismiss the town's referendum defense, the Court reasoned. The Court observed that "council was required pursuant to [Section 5–17–10 and –30] to call a referendum and abide by its results," but did not address the propriety of the zoning referendum.

ruling in order to preserve that issue for appellate review?

## DISCUSSION

### 1. ZONING BY INITIATIVE AND REFERENDUM

■ Appellants argue the circuit judge erred in striking down the proposed referendum. Appellants contend the Legislature intended for the provisions in Titles 5 and 6 to act in conjunction with one another. They believe the two titles are alternative and complementary means of enacting zoning legislation, and the adoption of the detailed zoning mechanism of Title 6 does not prohibit the enactment of zoning ordinances pursuant to the Title 5 initiative and referendum process. Appellants argue the Legislature has decided that "any ordinance," except for ones explicitly prohibited, may be enacted by initiative and referendum.

We disagree with appellants and conclude the Legislature could not have intended to allow zoning by referendum for two reasons. First, the conflict between the relatively free-ranging Title 5 initiative and referendum process and the elaborate, detailed zoning procedures contained in Title 6 are incompatible and hopelessly inconsistent. Second, allowing zoning by initiative and referendum potentially would nullify zoning and land use rules developed after extensive debate among a variety of interested persons.

### A. INCOMPATIBILITY OF THE TWO PROCESSES

■ The cardinal rule of statutory interpretation is to ascertain and effectuate the legislative intent whenever possible. *Bankers Trust of South Carolina v. Bruce,* 275 S.C. 35, 267 S.E.2d 424 (1980). A statute as a whole must receive a practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of the lawmakers. *State v. Baker,* 310 S.C. 510, 427 S.E.2d 670 (1993). Statutes in apparent conflict should, if reasonably possible, be construed to allow both to stand and to give effect to each. *Chris J. Yahnis Coastal, Inc. v. Stroh Brewery Co.,* 295 S.C. 243, 368 S.E.2d 64 (1988). Generally, specific laws prevail over general

laws, and later legislation takes precedence over earlier legislation. *Lloyd v. Lloyd,* 295 S.C. 55, 367 S.E.2d 153 (1988).

S.C.Code Ann. § 5–17–10 (Supp.1998), first enacted in 1962, provides that "electors of a municipality may propose any ordinance, except an ordinance appropriating money or authorizing the levy of taxes." The petition containing the proposed ordinance must be signed by qualified electors of the municipality equal in number to at least fifteen percent of the registered voters at the last regular municipal election.

S.C.Code Ann. § 5–17–30 (1976), also enacted in 1962, requires the council to submit the proposed ordinance to voters in a referendum when it fails to pass the ordinance or passes it in a form substantially different from that set forth in the petition.[2]

The above statutes are found in Title 5, which contains various provisions governing municipal corporations, ranging from incorporation and form of government to building codes and streets and sidewalks. *See* S.C.Code Ann. §§ 5–1–10 to 5–37–90 (1976 & Supp.1998).

Until this year, Chapter 23 of Title 5 contained zoning and planning provisions for municipalities, while Chapter 7 of Title 6 contained zoning and planning provisions available to both municipal and county governments. The "South Carolina Local Government Comprehensive Planning and Enabling Act of 1994" repealed existing zoning and planning provisions in Title 5 and Title 6 as of May 3, 1999. Act No. 355, 1994 Acts 4010. The 1994 Act combined the provisions into a single, comprehensive set of provisions available to local governments. S.C.Code Ann. §§ 6–29–710 to –960 (Supp.1998) (codifying portions of 1994 Act).[3]

---

**2.** Nearly identical provisions provide for an initiative and referendum process in county government matters. S.C.Code Ann. §§ 4–9–1210 to –1230 (1986).

**3.** The 1994 Act is codified at S.C.Code Ann. §§ 6–29–310 to –1200 (Supp.1998). The Act repealed S.C.Code Ann. §§ 5–23–10 to –740 and 6–7–310 to –1110 (1976 & Supp.1998).

Municipal governments could follow either set of the former provisions until their repeal this year, and they could implement the 1994 Act at any time. *See Fairfield Ocean Ridge, Inc. v. Town of Edisto Beach,* 294 S.C. 475, 479 n. 2, 366 S.E.2d 15, 18 n. 2 (Ct.App.1988)

Under Title 6, "[z]oning ordinances must be for the general purposes of guiding development in accordance with existing and future needs and promoting the public health, safety, morals, convenience, order, appearance, prosperity, and general welfare." S.C.Code Ann. § 6–29–710(A) (Supp.1998). Goals include the prevention of overcrowding of people, buildings, and traffic; the preservation of historic and ecologically sensitive areas; and the adequate provision of services to residents. *Id.*

Zoning regulations must address numerous factors, including building size, density of development, parking, and buffer areas. A local governing body may use a variety of zoning techniques, including planned development districts such as the one at issue in this case. S.C.Code Ann. § 6–29–720 and –740 (Supp.1998). The local planning commission or governing body must hold a public hearing before enacting or amending zoning regulations or maps, and must follow detailed procedures in conducting that hearing. S.C.Code Ann. § 6–29–760(A) (Supp.1998).

The governing body may create a board of zoning appeals to help resolve disputes, and that board must follow specific procedures in hearing and deciding cases. S.C.Code Ann. §§ 6–29–780 and –800 (Supp.1998). The board's decisions may be appealed to circuit and appellate courts. S.C.Code Ann. §§ 6–29–820 to –850 (Supp.1998).

Zoning and planning provisions in the repealed portions of Titles 5 and 6, and the new provisions in the 1994 Act, do not mention zoning by referendum. None contains any explicit guidance on whether the Legislature intended to let municipal voters enact zoning measures under the Title 5 initiative and referendum process.

---

(recognizing that the Title 5 provisions apply only to municipal governments while the Title 6 provisions apply to both municipal and county governments); *Johnston v. City of Myrtle Beach,* 283 S.C. 288, 291–92, 321 S.E.2d 627, 628–29 (Ct.App.1984) (holding that zoning provisions in Titles 5 and 6 exist harmoniously, and the earlier Title 5 provisions were not impliedly repealed when Legislature enacted the Title 6 provisions); Act No. 355, 1994 Acts 4036 (identifying repealed sections and stating that "[d]uring the intervening five years, this act is cumulative and may be implemented at any time").

Some courts have concluded that zoning by initiative and referendum is permissible despite detailed procedures contained in zoning statutes.[4] Other courts have prohibited such initiatives and referenda, finding that the detailed nature of zoning acts indicates a legislative intent that zoning matters must be decided only in the manner specified in those acts.[5]

We believe the latter view is the better one. We decline to interpret the "any ordinance" language in Section 5–17–10 to encompass zoning by initiative and referendum. The obvious incompatibility between the initiative and referendum process and the comprehensive Title 6 provisions indicates the Legislature did not intend to allow voters to enact more complex zoning measures by initiative and referendum. Furthermore, the Title 6 provisions enacted in 1994 address the matter of zoning in detail. We conclude the Legislature intended for this more specific and more recent enactment to take prece-

---

4. *See DeVita v. County of Napa*, 9 Cal.4th 763, 38 Cal.Rptr.2d 699, 889 P.2d 1019, 1026 (1995) (en banc) (local initiative process found in state constitution may be used to amend general land use plan); *Margolis v. District Court*, 638 P.2d 297, 304 (Colo.1981) (en banc) (zoning and rezoning are legislative acts subject to challenge under initiative and referendum process reserved to people in state constitution); *Greens at Fort Missoula v. City of Missoula*, 271 Mont. 398, 897 P.2d 1078, 1080–82 (1995) (zoning and rezoning are legislative acts subject to challenge under initiative and referendum process reserved to people in state constitution); *Citizen's Awareness Now v. Marakis*, 873 P.2d 1117, 1125–26 (Utah 1994) (allowing zoning by referendum only if the matter may be deemed legislative (as opposed to administrative) in nature and it is "material variance" from basic zoning law that is appropriate for voter consideration); *see also* Annots., 72 A.L.R.3d 991 § 6[a] and 1030 § 4 (1976) (collecting cases in which courts have found the initiative and referendum process compatible with the specific notice and hearing process contained in most zoning statutes).

5. *See Great Atlantic & Pacific Tea Co. v. Borough of Point Pleasant*, 137 N.J. 136, 644 A.2d 598, 601–03 (1994) (citing cases in which New Jersey appellate courts prohibited zoning by referendum prior to statutory prohibition because such measures would circumvent statutory procedural requirements and effectively remove local governmental bodies from land use planning); *Korash v. City of Livonia*, 388 Mich. 737, 202 N.W.2d 803 (1972) (recognizing the conflict and holding that procedures in zoning act must be strictly adhered to; thus, zoning by initiative is prohibited); *see also* Annots., 72 A.L.R.3d 991 § 6[b] and 1030 § 6 (1976) (collecting cases in which courts have found the initiative and referendum incompatible with the specific notice and hearing process contained in most zoning statutes).

dence over the general initiative and referendum process enacted thirty-seven years ago. *See Lloyd v. Lloyd, supra.*

## B. NULLIFICATION OF CAREFULLY DEVELOPED RULES

Zoning often is one of the most controversial activities undertaken by a local government. Some citizens view zoning as a requisite in today's world, necessary to control disparate uses of land, promote orderly development, and conserve valuable resources. To others, zoning raises the specter of an overbearing government bent on destroying individual property rights and independent spirits. As aptly expressed by the New Jersey Supreme Court,

> In municipal government, few issues generate as much public interest as the control of land-use development. Zoning ordinances touch people where they live. Sensitive to the intense public interest in local land-use development, the Legislature has developed an orderly structure for public participation in the process. That process also contemplates the rational development of land use, free from undue political influence.

*Great Atlantic & Pacific Tea Co. v. Borough of Point Pleasant,* 137 N.J. 136, 644 A.2d 598, 600 (1994).

Similarly, the comprehensive and detailed nature of the Title 6 provisions briefly outlined above reveals our Legislature's intent that zoning decisions should be made by a cross-section of unbiased officials after careful deliberation. Whether the zoning decisions involve the development of an overall zoning system or master plan, or the application of established rules in a particular case, Title 6 is designed to allow ample planning and ensure due process for all interested parties.

The Legislature has recognized by its enactment of detailed procedures in Title 6 that haphazard or thoughtless decisions are the antithesis of meaningful zoning. We agree with Developer that the Legislature has not condoned—and we should not approve—a process by which voters could circumvent this deliberative process by deciding zoning matters in an initiative and referendum process. Such a system ultimately could nullify a carefully established zoning system or master plan developed after debate among many interested persons

and entities, resulting in arbitrary decisions and patchwork zoning with little rhyme or reason.

Accordingly, we affirm the circuit judge's ruling and hold that zoning provisions may not be enacted by the initiative and referendum process contained in Sections 5–17–10 and –30.

## 2. ADDITIONAL SUSTAINING GROUNDS

The circuit judge based his ruling on the ground discussed in Issue 1. At a hearing on appellants' motion for reconsideration, appellants questioned a footnote in the judge's final order which stated, "Of course, if this order is appealed, [Developer] will be able to argue its other positions as additional sustaining grounds." The judge told appellants that his ruling was based only on the one ground outlined in the final order.

Developer did not ask the judge to rule on any other grounds, believing it could raise those matters on appeal as additional sustaining grounds under the authority of Rule 220(c), SCACR (appellate court may affirm for any reason appearing in the record). The parties expressed confusion about the need for a ruling on the additional grounds.

Developer, the prevailing party below, now raises several additional issues and arguments that were not ruled upon by the circuit judge. We find, for the reasons explained below, that it was proper for Developer to raise those issues and arguments. We further find it unnecessary to address any of them because Issue 1 is dispositive. However, we take this opportunity to review and clarify the law regarding additional sustaining grounds.

In raising an additional sustaining ground in an appeal, the party who prevailed in the lower court urges an appellate court to affirm the lower court's ruling for a reason other than one primarily relied upon by the lower court.

Under appellate practice rules in effect prior to 1990, a respondent—as the prevailing party below—properly could raise an additional sustaining ground if (1) the ground related to a matter that was presented to and ruled upon by the trial judge and (2) accepting the ground would lead to the same

result that the trial judge had reached.[6] *Colonial Life & Acc. Ins. Co. v. South Carolina Tax Comm'n*, 233 S.C. 129, 140–41, 103 S.E.2d 908, 913–14 (1958). The Court explained in *Colonial Life* that the practice of raising additional sustaining grounds dates back at least to 1889, and it is not necessary for the party who prevailed below to object to or appeal from the trial court's ruling in order to raise such grounds. Appellate courts adhered to the *Colonial Life* principles until the present appellate court rules took effect in 1990.[7] Rule 102, SCACR.

In revising the appellate court rules, we intended to abandon restrictions surrounding additional sustaining grounds and allow a more flexible process. We chose to avoid using the term "additional sustaining ground" in the present appellate court rules. Instead, the present rules provide simply that "[r]espondent's brief may also contain argument asking the court to affirm for any ground appearing on the record as provided by Rule 220(c), [SCACR]." Rule 208(b)(2), SCACR. Rule 220(c), in turn, provides that "[t]he appellate court may affirm any ruling, order, or judgment upon any ground(s) appearing in the Record on Appeal." [8]

---

6. The respondent also had to timely notify the appellant that he intended to raise certain additional sustaining grounds when he notified the appellant of any amendments to the proposed record. The Court eliminated former Supreme Court Rule 4, Section 7, which contained the notice requirement, in 1977. Under present rules, the appellant receives notice of the respondent's additional sustaining grounds through the respondent's brief. The appellant may address those additional grounds in a reply brief. Rule 208(a)(3), SCACR.

7. *E.g., Rental Uniform Serv. of Florence, Inc. v. Dudley*, 278 S.C. 674, 676, 301 S.E.2d 142, 144 (1983); *South Carolina Pub. Serv. Auth. v. Carolina Power & Light Co.*, 244 S.C. 466, 479, 137 S.E.2d 507, 512 (1964); *Carter v. Peace*, 229 S.C. 346, 354, 93 S.E.2d 113, 117 (1956); *Kizer v. Woodmen of the World*, 177 S.C. 70, 75, 180 S.E. 804, 806 (1935); *Self v. Goodrich*, 300 S.C. 349, 353, 387 S.E.2d 713, 715 (Ct.App.1989); *Action Mortg. Corp. v. Van Deusen*, 291 S.C. 208, 213, 352 S.E.2d 711, 714 (Ct.App.1987).

8. The present rules mention the term "additional sustaining ground" only once. *See* Rule 227(f), SCACR (certiorari to review post-conviction relief actions).

 The term "additional sustaining ground" is an extremely common one that is still widely used today in South Carolina. Given its continuing use, we abandon any effort to avoid use of the term and

In 1995, the Court of Appeals resurrected the pre–1990 principles by refusing to consider an additional sustaining ground because the party who prevailed below had not both presented the argument and obtained a ruling on it from the trial judge. *O'Tuel v. Villani,* 318 S.C. 24, 31 n. 1, 455 S.E.2d 698, 702 n. 1 (Ct.App.1995). Two years later, we cited *O'Tuel* in reaching the same conclusion. *Brashier v. South Carolina Dep't of Transp.,* 327 S.C. 179, 186 n. 7, 490 S.E.2d 8, 12 n. 7 (1997). Both *O'Tuel* and *Brashier* relied upon *Carter v. Peace,* 229 S.C. 346, 93 S.E.2d 113 (1956), in which the Court held that even if a matter was raised to the trial judge, any proposition relied on as an additional sustaining ground must be presented to and passed on by the trial judge to warrant consideration on appeal.

The Court of Appeals has cited *Brashier* or *O'Tuel* three times recently in denying appellate review of an additional sustaining ground because it was not both presented to and ruled on by the lower court. *Shealy v. South Carolina Dep't of Social Servs.,* 334 S.C. 187, 193, 511 S.E.2d 713, 715–16 (Ct.App.1999), *cert. granted,* September 10, 1999; *Osprey v. Cabana Ltd. Partnership,* 333 S.C. 323, 332 n. 7, 509 S.E.2d 275, 280 n. 7 (Ct.App.1998), *cert. granted,* August 19, 1999; *Charleston Lumber Co. v. Miller Housing Corp.,* 329 S.C. 414, 420, 496 S.E.2d 637, 640 (Ct.App.1998) (en banc), *cert. granted* February 10, 1999.

■ Under the present rules, a respondent—the "winner" in the lower court—may raise on appeal any additional reasons the appellate court should affirm the lower court's ruling, regardless of whether those reasons have been presented to or ruled on by the lower court. It would be inefficient and pointless to require a respondent to return to the judge and ask for a ruling on other arguments to preserve them for appellate review. It also could violate the principle that a court usually should refrain from deciding unnecessary questions. *Cf. Fairway Ford, Inc. v. County of Greenville,* 324 S.C. 84, 476 S.E.2d 490 (1996) (illustrating Court's "firm

instead just clarify the law surrounding it. In raising such grounds in an appeal, parties may use the term or simply refer to Rule 208(b)(2), SCACR.

policy" of declining to reach constitutional issues when it is not necessary to resolve a case).

■ The basis for respondent's additional sustaining grounds must appear in the record on appeal, but other requirements contained in former rules and pre–1990 precedent no longer apply. Of course, a respondent may abandon an additional sustaining ground under the present rules—just as a respondent could under the former rules—by failing to raise it in the appellate brief. *Maxey v. R.L. Bryan Co.,* 295 S.C. 334, 336 n. 2, 368 S.E.2d 466, 467 n. 2 (Ct.App.1988); *May v. Hopkinson,* 289 S.C. 549, 558, 347 S.E.2d 508, 513 (Ct.App.1986); *see also* Rule 208(b)(1)(B), SCACR ("[o]rdinarily, no point will be considered which is not set forth in the statement of the issues on appeal").

■ The appellate court may review respondent's additional reasons and, if convinced it is proper and fair to do so, rely on them or any other reason appearing in the record to affirm the lower court's judgment. An appellate court may not rely on Rule 220(c), SCACR, when the reason does not appear in the record, or when the court believes it would be unwise or unjust to do so in a particular case. It is within the appellate court's discretion whether to address any additional sustaining grounds.[9]

Consequently, it is not always necessary for a *respondent*— as the winning party in the lower court—to present his issues and arguments to the lower court and obtain a ruling on them in order to preserve an issue for appellate review. This approach is in keeping with the view, as expressed in Rule 220(c), SCACR, that an appellate court may affirm the lower

---

**9.** The appellate court may find it unnecessary to discuss respondent's additional sustaining grounds when its affirmance is grounded in an issue addressed by the lower court. *E.g., South Carolina Federal Sav. Bank v. Atlantic Land Title Co.,* 314 S.C. 292, 298 n. 5, 442 S.E.2d 630, 633 n. 5 (Ct.App.1994) (affirming lower court's decision and declining to discuss additional sustaining grounds). The appellate court may or may not wish to address such grounds when it reverses the lower court's decision. *E.g., Smith v. Haynsworth, Marion, McKay & Geurard,* 322 S.C. 433, 438, 472 S.E.2d 612, 615 (1996) (reversing lower court and declining to discuss additional sustaining grounds); *Huff v. Jennings,* 319 S.C. 142, 148, 459 S.E.2d 886, 890 (Ct.App.1995) (reversing lower court's decision and discussing additional sustaining ground).

court's judgment for any reason appearing in the record on appeal. An affirmance promotes judicial economy and finality in private and public affairs, which are important public policies. *E.g., Kreutner v. David,* 320 S.C. 283, 465 S.E.2d 88 (1995) (appellate court may affirm for any reason appearing in the record); *State v. Johnson,* 278 S.C. 668, 301 S.E.2d 138 (1983) (same).[10]

In clarifying the law, we do not mean to dilute the important principle that all parties should raise all necessary issues and arguments to the lower court and attempt to obtain a ruling. While the current rules do not require the respondent to present an issue to the lower court in order to raise it as an additional sustaining ground, an appellate court is less likely to rely on such a ground when the respondent has failed to present it to the lower court. In such cases, the appellate court likely would perceive it as being unfair or unwise to resolve a case on a ground never mentioned by the respondent prior to appeal. Stated another way, the respondent may raise an additional sustaining ground that was not even presented to the lower court, but the appellate court is likely to ignore it.[11]

 In contrast, different preservation rules apply to an *appellant*—the losing party in the lower court. An appellate court may not, of course, *reverse* for any reason appearing in

---

**10.** *Accord Far North Sanitation, Inc. v. Alaska Pub. Util. Comm'n,* 825 P.2d 867 (Alaska 1992) (appellate court may affirm for any reason appearing in record); *State v. McCowen,* 297 N.W.2d 226 (Iowa 1980) (same); *State v. Boggess,* 204 W.Va. 267, 512 S.E.2d 189 (1998) (same); *Valentine v. Ormsbee Exploration Corp.,* 665 P.2d 452 (Wyo.1983) (same); *Greenbriar Condominium Apts. II Assoc. v. Koch,* 480 So.2d 131 (Fla.Dist.Ct.App.1985) (same); *McCarthy v. Yempuku,* 5 Haw.App. 45, 678 P.2d 11 (1984) (same).

**11.** The Court appears to have imposed, in a case decided after the new appellate court rules took effect, a pre–1990 requirement that additional sustaining grounds be presented to the lower court to be available for consideration on appeal. *Nichols v. Amalgamated Clothing and Textile Workers Union,* 305 S.C. 323, 328, 408 S.E.2d 237, 240 (1991), *overruled on other grounds, Lewis v. Local 382, Intern. Broth. of Elec. Workers (AFL–CIO),* 335 S.C. 562, 518 S.E.2d 583 (1999). *Nichols* arose prior to 1990. As explained above, the current rules do not impose any presentation requirement. However, the failure to present an additional sustaining ground to the lower court reduces the likelihood an appellate court will rely on it to affirm a judgment.

the record. The losing party must first try to convince the lower court it is has ruled wrongly and then, if that effort fails, convince the appellate court that the lower court erred. This principle underlies the long-established preservation requirement that the losing party generally must both present his issues and arguments to the lower court and obtain a ruling before an appellate court will review those issues and arguments. *E.g.*, *Smith v. Phillips*, 318 S.C. 453, 458 S.E.2d 427 (1995) (appellate court generally will not address an issue unless the issue was raised to and ruled upon by the trial court); *State v. Williams*, 303 S.C. 410, 401 S.E.2d 168 (1991) (same); *Sumter Building & Loan Ass'n v. Winn*, 45 S.C. 381, 23 S.E. 29 (1895) (same).

If the losing party has raised an issue in the lower court, but the court fails to rule upon it, the party must file a motion to alter or amend the judgment in order to preserve the issue for appellate review. *E.g.*, *Pelican Bldg. Centers of Horry–Georgetown, Inc. v. Dutton*, 311 S.C. 56, 427 S.E.2d 673 (1993); *Hoffman v. Powell*, 298 S.C. 338, 380 S.E.2d 821 (1989); *see also* Rules 52(b) and 59(e), SCRCP.

Imposing this preservation requirement on the appellant is meant to enable the lower court to rule properly after it has considered all relevant facts, law, and arguments. *See Roche v. South Carolina Alcoholic Beverage Control Comm'n*, 263 S.C. 451, 211 S.E.2d 243 (1975) (purpose of an appeal is to determine whether the trial judge erroneously acted or failed to act and when appellant's contentions are not presented or passed on by the trial judge, such contentions will not be considered on appeal). The requirement also serves as a keen incentive for a party to prepare a case thoroughly. It prevents a party from keeping an ace card up his sleeve—intentionally or by chance—in the hope that an appellate court will accept that ace card and, via a reversal, give him another opportunity to prove his case. *See Brown v. Singletary*, 226 S.C. 482, 85 S.E.2d 738 (1955) (party may not neglect or ignore vices in the trial, then expect to assert those vices on appeal in case of disappointment at trial); *State v. Warren*, 207 S.C. 126, 134, 35 S.E.2d 38, 41 (1945) (same).

Again, while we clarify the law on additional sustaining grounds, we emphasize that all parties should raise all neces-

sary arguments to the lower court and attempt to obtain a ruling. However, when the lower court rules in one party's favor, it is not necessary for that party to return to the court and ask for a ruling on remaining issues and arguments in order to preserve those arguments for use in an appeal. To the extent that recent cases follow the pre–1990 rules on additional sustaining grounds, they are overruled.[12]

## CONCLUSION

We affirm the circuit judge and hold that zoning by initiative and referendum is not allowed in South Carolina pursuant to Sections 5–17–10 and –30. We review and clarify the law on additional sustaining grounds, but find it unnecessary to address such grounds raised by Developer in this case.

AFFIRMED.

FINNEY, C.J., TOAL, MOORE, and BURNETT, JJ., concur.

---

**12.** Those cases include *Brashier v. South Carolina Dep't of Transp.*, 327 S.C. at 186 n. 7, 490 S.E.2d at 12 n. 7; *O'Tuel v. Villani*, 318 S.C. at 31 n. 1, 455 S.E.2d at 702 n. 1; *Shealy v. South Carolina Dep't of Social Servs.*, 334 S.C. at 193, 511 S.E.2d at 715–16; *Osprey v. Cabana Ltd. Partnership*, 333 S.C. at 332 n. 7, 509 S.E.2d at 280 n. 7; *Charleston Lumber Co. v. Miller Housing Corp.*, 329 S.C. at 420, 496 S.E.2d at 640.