647 S.E.2d 244

**Anthony Wade MOTLEY, Respondent,**

v.

**Clarence WILLIAMS, Appellant.**

**No. 4248.**

Court of Appeals of South Carolina.

Submitted May 1, 2007.
Decided May 18, 2007.

Stevens C. Elliott, of Columbia, for Appellant.

George W. Speedy, of Camden, for Respondent.

ANDERSON, J.

Clarence Williams appeals the denial of his motion to set aside the master-in-equity's settlement order. We affirm.[1]

## FACTUAL/PROCEDURAL BACKGROUND

This action emanates from a dispute involving a 9.68 acre parcel of land in Kershaw County. In 1987, Clarence Williams' father contracted to sell the plot at issue to Anthony Motley's father. In 2002, Motley brought suit against Williams seeking transfer of the title of the subject property.[2] In his complaint, Motley alleged he was entitled to relief under the theories of specific performance, part performance, and adverse possession. In response, Williams raised the doctrines of statute of limitations, laches, estoppel, waiver, and

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

2. At the time suit was brought, both Wade Motley and Willie Williams were deceased, having assigned or sold all of their rights, title and interest in the land to their sons, the named parties in this action.

innocent purchaser as defenses. By consent of the parties, the matter was referred to the Kershaw County master-in-equity.

A hearing before the master was held on June 3, 2005. Although the prior communication between the lawyers and their clients is in dispute, shortly before the trial was set to convene, counsel for both sides met with the master in chambers and informed him they had reached a settlement that they desired to put on record.

When the hearing convened, a proposed agreement was jointly presented by counsel for both parties. During the hearing, the court posed questions regarding the settlement to both sides' attorneys. Motley and Williams were present throughout the entire proceeding. Ultimately, the master reduced the agreement to a written order, filed on September 29, 2005.

Subsequently, Williams retained different counsel, who moved to set aside the settlement order. The master denied the motion. Williams again hired a new attorney, through whom this appeal was filed.

### *LAW/ANALYSIS*

Williams contends the master erred in denying his motion to set aside the settlement order. He alleges his trial attorney mistakenly entered into the agreement against his wishes and specific instructions, therefore invalidating the agreement. We disagree.

### 1. SETTLEMENT AGREEMENTS

To be enforceable, settlement agreements must either be entered into the court's record or acknowledged in open court and placed upon the record. *Buckley v. Shealy*, 370 S.C. 317, 322, 635 S.E.2d 76, 78 (2006); *Galloway v. Regis Corp.*, 325 S.C. 541, 481 S.E.2d 714 (Ct.App.1997); *Kumar v. Third Generation, Inc.*, 324 S.C. 284, 485 S.E.2d 626 (Ct.App.1995). This requirement is provided by Rule 43(k) of the South Carolina Rules of Civil Procedure. *Ashfort Corp. v. Palmetto Construction Group, Inc.*, 318 S.C. 492, 493–94, 458 S.E.2d 533, 534 (1995) ("In our opinion, Rule 43(k) is applicable to settlement agreements."); *Widewater Square Assocs. v. Open-*

*ing Break of America, Inc.,* 319 S.C. 243, 245, 460 S.E.2d 396, (1995) ("a settlement order is unenforceable where it fails to set forth the terms of the settlement as required by Rule 43(k), SCRCP."); *Reed v. Associated Invs. of Edisto Island, Inc.,* 339 S.C. 148, 528 S.E.2d 94 (Ct.App.2000). The rule states:

> Agreements of Counsel. No agreement between counsel affecting the proceedings in an action shall be binding unless reduced to the form of a consent order or written stipulation signed by counsel and entered in the record, or unless made in open court and noted upon the record. Settlement agreements shall be handled in accordance with Rule 41.1, SCRCP.

Rule 43(k), SCRCP.

■ "Like former Circuit Court Rule 14 on which it is based, Rule 43(k) is intended to prevent disputes as to the existence and terms of agreements regarding pending litigation." *Ashfort* at 493–94, 458 S.E.2d at 534. "[A]pplication of Rule 43(k) will increase the certainty of settlement agreements by avoiding disputes." *Id.* at 494–95, 458 S.E.2d at 535.

## 2. ATTORNEY/CLIENT CONTRACTUAL RELATIONSHIP

■ It is a long-standing and well-settled rule that an attorney may settle litigation on behalf of his client and that the client is bound by his attorney's settlement actions. *See Crowley v. Harvey & Battey, P.A.,* 327 S.C. 68, 488 S.E.2d 334 (1997); *Shelton v. Bressant,* 312 S.C. 183, 439 S.E.2d 833, (1993); *Poore v. Poore,* 105 S.C. 206, 89 S.E. 569 (1916); *Arnold v. Yarborough,* 281 S.C. 570, 572 316 S.E.2d 416, 417 (Ct.App.1984). "This rule is based on the principles of agency law." *Crowley* at 70, 488 S.E.2d at 335.

> It will never do, in the absence of fraud, to allow the undoubted attorneys of record for a party to a suit to enter into a solemn agreement to settle and adjust the issues and subject-matter of a suit and then later, if it is done, because for any reason the party is dissatisfied, to allow him to

repudiate this agreement and employ different counsel to upset and set aside what his first counsel has done.

*Poore* at 211–12, 89 S.E. at 571.

■ "Acts of an attorney are directly attributable to and binding upon the client. Absent fraud or mistake, where attorneys of record for a party agree to settle a case, the party cannot later repudiate the agreement." *Shelton* at 184, 439 S.E.2d at 834 (quoting *Arnold v. Yarborough,* 281 S.C. 570, 572 316 S.E.2d 416, 417 (Ct.App.1984)). This court has held:

> [E]mployment of an attorney in a particular suit implies his client's assent that he may do everything which the court may approve in the progress of the cause. Upon this distinction in a large measure rest the certainty, verity, and finality of every judgment of a court. Litigants must necessarily be held bound by the acts of their attorneys in the conduct of a cause in court, in the absence, of course, of fraud.

*Arnold* at 572, 316 S.E.2d at 417 (quoting *Ex parte Jones,* 47 S.C. 393, 397, 25 S.E. 285, 286 (1896)).

■ Any communication failure or mistake on the part of an attorney is directly attributable to his client. *See Kirkland v. Moseley,* 109 S.C. 477, 96 S.E. 608 (1918) (a party cannot set aside settlement agreement signed pursuant to attorney's erroneous legal advice); *see also Graham v. Town of Loris,* 272 S.C. 442, 451, 248 S.E.2d 594, 598 (1978) ("The general rule in this jurisdiction is that the neglect of the attorney is attributable to the client."). Relief from such an error rests in an action against the lawyer:

> [I]f the attorney has apparent authority to confess, or consent to, judgment, it is ordinarily binding and conclusive on the client, notwithstanding an actual lack of authority unknown to the court or the opposing party, the sole remedy in such a case being against the attorney.

*Lord Jeff Knitting Co., Inc. v. Mills,* 281 S.C. 374, 377, 315 S.E.2d 377, 379 (Ct.App.1984) (citing 7A C.J.S. *Attorney & Client* § 200 at 332 (1980); *Poore* at 212, 89 S.E. at 569); *see also Crowley* at 70, 488 S.E.2d at 335 ("where a client alleges his former attorney was negligent in advising him to accept a settlement, that alleged negligence is not a ground for attack-

ing the settlement itself but rather is a matter left for a malpractice suit between the client and his attorney.").

In *Shelton v. Bressant,* 312 S.C. 183, 439 S.E.2d 833 (1993), the appellant and his attorney appeared in open court and advised the presiding judge they had been able to settle their case with the opposing party. The following day, an oral agreement between the two sides was tape-recorded and subsequently transcribed. Shortly thereafter, the appellant attempted to repudiate the settlement agreement, contending it failed to meet his terms. Our supreme court found the agreement binding and held:

> [Appellants'] contention that the suit was not settled according to his instructions does not entitle him to rescind the agreement.

> When a litigant voluntarily accepts an offer of settlement, either directly or indirectly through the duly authorized actions of his attorney, the integrity of the settlement cannot be attacked on the basis of inadequate representation by the litigant's attorney. In such cases, any remaining dispute is purely between the party and his attorney.

*Id.* at 185, 439 S.E.2d at 834 (citing *Petty v. The Timken Corp.,* 849 F.2d 130, 133 (4th Cir.1988)) (emphasis removed from original).

██ In his brief to this court, Williams asserts that he "repeatedly instructed his attorney not to settle the case under any circumstances...." However, during the hearing before the master, his attorney did in fact settle the case and did so directly in Williams' presence. Williams makes no claim of fraud, and offers simply that mistake existed. Although he compares the issue with contract doctrine, stating "there was no meeting of the minds in regard to the settlement agreement," the exact cause of and parties involved in this alleged mistake are never fully articulated. Williams argues: "[N]o one ever explained to Mr. Williams to what he was agreeing, nor did anyone ask. Because of his lack of education and experience with the court system, he was completely confused as to what was transpiring in the courtroom."

Undoubtedly, Williams was, or should have been, well apprised that his attorney was entering into a settlement agreement. As detailed in the record:

COURT: ... Both parties are present today. The Plaintiff is represented by George W. Speedy of the Kershaw County Bar, and the Defendant is represented by Roderick M. Todd of the Kershaw County. I did briefly discuss this matter with the attorneys prior to the commencement of this proceeding, and I understand the parties have reached a settlement in this matter; is that correct, Mr. Speedy?

SPEEDY: That is correct, Your Honor.

COURT: If one of you would advise me of what it is.

SPEEDY: Yes, Your Honor....

. . .

SPEEDY: And I believe that is the agreement of the parties.

TODD: Each party will be responsible for their own costs....

COURT: Did you want to question either of your parties?

SPEEDY: I don't think that's necessary. I just wanted to put it on the record, and we are good to go.

COURT: Okay. Well, having heard the agreement in open Court, I am glad that the parties [] were able to resolve this matter between themselves privately without me having to make another difficult decision as is typically the case when cases make it to Court....

As such, the transcript of the proceeding decidedly and incontestably reflects Williams' attorney's consent to the settlement agreement.

Furthermore, the record illustrates clarity as to nature and contents of the settlement. More specifically, during the hearing, the judge and two attorneys comprehensively and conspicuously laid out the manner in which the land at issue was to be divided between Motley and Williams:

SPEEDY: ... We have agreed to equally divide that parcel of property, and we have agreed to divide it—how would you determine it——

TODD: Such that Mr. Motley would receive the parcel closest to land now or formerly Loblolly which looks to be on the eastern side of the property.

SPEEDY: That's right.

TODD: And Mr. Williams would receive, of course, the other half on the western side.

COURT: And if you would, just discuss for me the access road of that parcel that would be cut off for the Plaintiff.

SPEEDY: It has access; there's a deeded right-of-way across the property of Edward Evans.

Although simple, the agreement is nonetheless complete and thorough, calling for the 9.68 acre property to be divided in equal shares. The arrangement clearly requires a line to be drawn from north to south through the center of the land, providing Motley with the eastern half and Williams with the remaining western portion.

While Williams may at one time have had every intention of having the case tried, his attorney consented to a settlement before the court. His counsel presumptively possessed the authority to make such an agreement, particularly in light of the fact that Williams was present in the courtroom at that time. Any mistake that may have occurred was solely a result of a communication breakdown between Williams and his attorney. As prescribed by the law of this state, Williams is bound by the actions of his lawyer.

██ Williams claims the trial court erred in not questioning the parties during the initial hearing nor requiring affidavits in deciding his motion to set aside the order. He alleges the settlement agreement read into the record fails to meet the requirements of SCRCP 43(k) because it lacks the required specificity as to the terms of the agreement. These issues were never raised before the master, and we therefore decline to rule on their merits, as they are not preserved for review. *See Staubes v. City of Folly Beach,* 339 S.C. 406, 412, 529 S.E.2d 543, 546 (2000) ("It is well-settled that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial court to be preserved for appellate review."); *see also I'On, L.L.C v. Town of Mt. Pleasant,* 338 S.C. 406, 422, 526 S.E.2d 716, 724 (2000) ("Imposing this preservation requirement on the appellant is

meant to enable the lower court to rule properly after it has considered all relevant facts, law, and arguments."); *Ellie, Inc. v. Miccichi*, 358 S.C. 78, 103, 594 S.E.2d 485, 498 (Ct.App. 2004) ("Without an initial ruling by the trial court, a reviewing court simply would not be able to evaluate whether the trial court committed error.").

## CONCLUSION

Accordingly, the master-in-equity's ruling denying appellant's motion to set aside the settlement order is

**AFFIRMED.**

HUFF and BEATTY, JJ., concur.