THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
 In The Court of Appeals
 
 
 
 
 Furman Dabbs & Dabbs Incorporated, Appellants,
 
 
 
 

v.

 
 
 
 William R, Davis, Asset Management, Inc., & Pacific Life Insurance Company, (Formerly Pacific Mutual Life Insurance Company), Respondents.
 
 
 

Appeal From Greenville County
 John C. Few, Circuit Court Judge

Unpublished Opinion No. 2005-UP-506
Submitted May 5, 2005  Filed August 30, 2005   

AFFIRMED

 
 
 
 Francis T. Draine, of Columbia, for Appellants.
 J.D. Quattlebaum, J.W. Matthews, III, and Kymric Y. Mahnke, of Greenville, for Respondents.
 
 
 

PER CURIAM:  Furman Dabbs and his corporation, Dabbs Incorporated, appeal from a directed verdict for William Davis, Asset Management, Inc., and Pacific Life Insurance Company.  We affirm.[1] 
FACTS
Pacific Life entered into separate, distinct, and non-exclusive contracts with Dabbs and Dabbs, Inc. (collectively Dabbs) and Davis.  Both Dabbs and Davis are independent life insurance agents.  Pacific Life hired Davis as a Producer and assigned him to Dabbs, one of Pacific Lifes Marketing Organizations, for back office support, product training, and administration.[2]  Dabbs was not a party to the Producer contract between Davis and Pacific Life.  The Marketing Organization contract between Pacific Life and Dabbs stated the following:
 
 No territory or product is assigned to Marketing Organization or its employees, agents or brokers exclusively . . . . [Pacific Life] may exclude any state or portion thereof from the territory from which Marketing Organization may submit applications.  Marketing Organization does not have authority to change or terminate any contract or agreement between a Producer and [Pacific Life].  [Pacific Life] may, at its sole option, refuse to contract with any proposed Producer.  [Pacific Life] may terminate any [Pacific Life] contract made with any Producer with or without cause at [Pacific Lifes] discretion.   
 
 In all other aspects, the two contracts have similar applicable provisions.  Either party may terminate the contract at any time.  Furthermore, the contracts provide [n]o oral promises or representations shall be binding nor shall this contract be modified except by agreement in writing.  It is undisputed that neither the Marketing Organization contract nor the Producer contract was ever modified. 
 Davis sales accounted for a substantial majority of Dabbs Pacific Life business.  In 1999, Davis informed Dabbs he was interested in expanding his business, even suggesting that Dabbs and Davis form a partnership.  However, Dabbs admitted he was never interested in a partnership with Davis.  Pacific Life, through numerous contacts with Davis, expressed its sincere hope that Davis and Dabbs would work something out.  In addition, Pacific Life encouraged Dabbs to work something out with Davis, even suggesting a partnership in owning the Marketing Organization.
 Dabbs never conveyed the suggested offer to Davis, and at a December 8, 1999 meeting, Davis indicated he would go ahead and build [his] company without Dabbs and would either do it with Pacific Life, Manual Life or one of the other companies [he] was working with.  Pacific Life told Dabbs that Davis had inquired about forming a Marketing Organization contract, at which time Dabbs requested Pacific Life hold off offering the contract until Dabbs and Davis could agree on a new arrangement. 
 On December 14, 1999, Dabbs sent Davis a proposal by e-mail.  Among other things, the proposal suggested making Davis an officer in Dabbs, Inc. and giving Davis a twenty-point override on variable life products.  In discussions that followed, Dabbs allegedly told Davis the additional twenty points would be coming from Dabbs instead of Pacific Life because Dabbs would be paying Davis under the table.  Though Dabbs told Pacific Life that a new arrangement seemed inevitable, Davis informed Pacific Life that he wasnt pleased and that [Dabbs] was planning on paying him under the table.  Because Davis did not intend on working with Dabbs any further, Pacific Life offered Davis a Marketing Organization contract.  He subsequently accepted on December 22, 1999, but not before he notified Dabbs in writing that he was no longer interested in an arrangement with Dabbs.  His e-mail stated that he was truly sorry this [had] come to such an end, but he had absolutely no intention of getting involved in litigation between Dabbs and Pacific Life, signifying his concern with the possible under the table payments of points. 
            Dabbs filed a complaint against Davis, Asset Management, Inc. (Davis company), and Pacific Life (collectively Respondents) on eighteen causes of action, including: breach of contract, breach of fiduciary duty, fraud, unfair trade practices, and breach of the covenant of good faith and fair dealing.  Respondents moved for a directed verdict at the end of the trial in September 2003.  The trial judge took the matter under advisement and requested that both parties submit memorandums.  The judge also requested that Respondents submit a proposed order granting a directed verdict on all causes of action, except in regards to possible unpaid commissions required by the contract between Dabbs and Pacific Life.  Both parties offered extensive oral arguments as to the unpaid commissions issue, and the trial judge took this matter under advisement as well.
 On February 5, 2004, Dabbs filed a memorandum in opposition to a directed verdict, followed by Respondents reply memorandum.  Later that February, Dabbs filed a motion for a mistrial because he claimed the jury was dismissed prior to the resolution of factual issues.  The trial judge ordered a directed verdict for Respondents on all causes of action.  He subsequently denied Dabbs motions for reconsideration and mistrial.  This appeal followed.         
 STANDARD OF REVIEW
 In ruling on motions for a directed verdict, the trial court is required to view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the party opposing the motions and to deny the motions where either the evidence yields more than one inference or its inference is in doubt.  Strange v. South Carolina Dept of Highways & Pub. Transp., 314 S.C. 427, 429-30, 445 S.E.2d 439, 440 (1994).  When considering directed verdict motions, neither the trial court nor the appellate court has authority to decide credibility issues or to resolve conflicts in the testimony or evidence.  Harvey v. Strickland, 350 S.C. 303, 308, 566 S.E.2d 529, 532 (2002).  In essence, we must determine whether a verdict for a party opposing the motion would be reasonably possible under the facts as liberally construed in his favor.  Bultman v. Barber, 277 S.C. 5, 7, 281 S.E.2d 791, 792 (1981).  If the evidence is susceptible to more than one reasonable inference, the case should be submitted to the jury.  Quesinberry v. Rouppasong, 331 S.C. 589, 594, 503 S.E.2d 717, 720 (1998).
 LAW/ANALYSIS 
 I.  Fiduciary Duty
Dabbs claims the trial judge erred in directing a verdict for Respondents because a fiduciary relationship between the parties was breached.  We disagree.
 

 South Carolina Appellate Court Rules specify that an appellant brief shall be divided into as many parts as there are issues to be argued. At the head of each part, the particular issue to be addressed shall be set forth in distinctive type, followed by discussion and citations of authority.  Rule 208(b)(1)(D), SCACR.  South Carolina law states that short, conclusory statements made without supporting authority are deemed abandoned on appeal and therefore not presented for review.  Glasscock, Inc. v. United States Fid. & Guar. Co., 348 S.C. 76, 81, 557 S.E.2d 689, 691 (Ct. App. 2001).
Dabbs did not cite any supporting authority for his position.  Dabbs directs this court to his memorandum in opposition to the motion for a directed verdict, even though this argument was not restated in his brief, and he did not make a single citation to any error in the trial judges order in the body of his argument.  Further, Dabbs arguments are merely conclusory statements.  Therefore, Dabbs abandoned the issues on appeal, and this court need not address them.  See First Sav. Bank v. McLean, 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994) (stating Appellant was deemed to have abandoned an issue for which he failed to provide any argument or supporting authority); R & G Const., Inc. v. Lowcountry Regional Transp. Auth., 343 S.C. 424, 437, 540 S.E.2d 113, 120 (declaring an issue is deemed abandoned if argument in appellate brief is only conclusory).  
II. Discharge of the jury 
Dabbs also claims the trial judge erred in discharging the jury prior to ruling on the directed verdict motion.  We disagree.
 It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review.  Wilder Corp. v. Wilke, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998).  An appellate court may not, of course, reverse for any reason appearing in the record. The losing party must first try to convince the lower court it is has ruled wrongly and then, if that effort fails, convince the appellate court that the lower court erred.  IOn, L.L.C. v. Town of Mt. Pleasant, 338 S.C. 406, 421-422, 526 S.E.2d 716, 724 (2000) (emphasis in original).  Imposing this preservation requirement on the appellant is meant to enable the lower court to rule properly after it has considered all relevant facts, law, and arguments.  Id. at 422, 526 S.E.2d at 724. 
 The trial judge sufficiently informed the parties that he was taking the motion for a directed verdict under advisement, but was 100 percent sure that [he was] going to grant a directed verdict on some claims and 99.9 percent sure that [he was] going to grant directed verdict on all of the other claims except for breach of contract.  The judge also asked Dabbs counsel if he needed a jury to decide if Pacific Life breached its contract with Dabbs and any damages that may have arisen from that breach.  Dabbs counsel replied, I dont think so.  In a lengthy discussion, the trial judge told the parties his thoughts as to the directed verdict motion, and he requested that Respondents draft a proposed order to that effect.  Dabbs did not object to the jurys dismissal during the discussions or for almost a month afterward.  Therefore, this issue is not preserved for appeal.  
 III.  Vested commissions 
Dabbs claims the trial judge erred in overlooking its previous ruling that Pacific Life owed Dabbs vested commissions from the breach of contract claim.  We disagree.
 Dabbs misstates the trial judges decision.  The trial judge did not overlook the vested commission issue, as Dabbs suggests.  Instead, he chose to direct a verdict for Respondents on all claims.  While the trial judge suggested at trial that he might consider damages for breach of contract, he did not make a final decision.  Furthermore, he requested the parties to thoroughly brief the issue.  In his final order dated March 1, 2004, the trial judge granted Respondents motion for directed verdict on all causes of action.
 AFFIRMED.
HEARN, C.J., BEATTY and SHORT, JJ., concur.
 
 
 [1] We decide this case without oral argument pursuant to Rule 215, SCACR.
 [2] As an entity, the Marketing Organization procures its sales through the Producer, who is appointed by Pacific Life.